Jan **STENSRUD**, Plaintiff
and Appellant,

v.

**MAYVILLE STATE COLLEGE**, a
public corporation, Defendant
and Appellee.

Civ. No. 10798.

Supreme Court of North Dakota.

May 22, 1985.

Daniel J. Chapman, Chapman & Chapman, Bismarck, for plaintiff and appellant.

Rick D. Johnson, Asst. Atty. Gen., State Board of Higher Educ., Bismarck, for defendant and appellee.

LEVINE, Justice.

This is an appeal by Jan Stensrud (Stensrud) from the district court's summary judgment dismissing her action for injunctive relief against Mayville State College (MSC). We affirm.

Stensrud was hired by MSC in 1978 as a probationary non-tenured physical education instructor and softball and basketball coach. She continued in that status until May 16, 1983, when, although eligible for tenure, she was offered a contract terminating her employment at MSC at the conclusion of the 1983–1984 academic year. At Stensrud's request, her termination was reconsidered by MSC President, Dr. James A. Schobel, and confirmed. Subsequently, upon Stensrud's petition, the MSC Special Review Committee reviewed the matter and concluded that President Schobel's decision to terminate Stensrud comported with North Dakota State Board of Higher Education regulations.

Stensrud then brought suit in district court alleging MSC failed to follow the proper termination procedures. She sought to enjoin MSC to comply with the appropriate procedures or offer her a contract for the 1984–1985 academic year. Both parties moved for summary judgment which the trial court granted in favor of MSC. Stensrud appealed.

■ Initially it is important to recognize the very circumscribed rights and remedies available to Stensrud. As a non-tenured[1] teacher Stensrud had no right to continued employment beyond the duration of her contract. Stensrud possessed no "property interest" in continued employment protected by the Fourteenth Amendment to the United States Constitution. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); see also, *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Stensrud raises no other constitutional claims and therefore her only available legal right is the enforcement of MSC's contractual duty to comply with her contract. Consequently, our task is limited to reviewing the district court's decision that MSC performed its obligations under that contract as to warrant summary judgment in its favor.

■ Summary judgment is appropriate to promptly and expeditiously dispose of controversies without trial when, after viewing the evidence in a light most favorable to the party against whom summary judgment is sought and giving her the benefit of all favorable inferences, only a question of law is involved or there is no genuine dispute over either the material facts or inferences to be found from undisputed facts. *Garcia v. Overvold Motors, Inc.,* 351 N.W.2d 110 (N.D.1984); *Allegree v. Jankowski,* 355 N.W.2d 798 (N.D.1984);

*Wilbur-Ellis Co. v. Wayne & Juntunen Fertil.,* 351 N.W.2d 106 (N.D.1984). Even when a factual dispute exists summary judgment is proper if the law is such that the resolution of the factual dispute will not change the result. *Gowin v. Hazen Memorial Hospital Ass'n,* 349 N.W.2d 4 (N.D.1984).

■ Interpretation of a written contract to determine its legal effect is a question of law, *Miller v. Schwartz,* 354 N.W.2d 685 (N.D.1984), and summary judgment is proper only when a case involves contract interpretation and no genuine issues of material fact exist. *Balsam v. Buehner,* 278 N.W.2d 425 (N.D.1979).

■ In this case the trial court concluded as a matter of law, based upon its finding of undisputed facts, that although MSC "did not conform with the precise terms of the termination procedures, [Stensrud] was presented with an opportunity to be heard and has not been prejudiced by any action [of MSC]." Granting summary judgment for MSC, the trial court determined its standard of review was limited to determining if MSC had abused its discretion in terminating Stensrud and concluded as a matter of law it had not.[2]

Stensrud asserts the trial court erred in not granting summary judgment because, as a matter of law, MSC violated the terms of her contract by not following the State Board of Higher Education regulations governing termination proceedings. Alternatively, Stensrud claims the trial court erred in awarding summary judgment for

---

**1.** Tenure in the academic community commonly refers to a status granted, usually after a probationary period, which protects a teacher from dismissal except for serious misconduct, incompetence, financial exigency, or change in institutional programs. *Drans v. Providence College,* 383 A.2d 1033 (R.I.1978); *Hennessey v. National Collegiate Athletic Ass'n,* 564 F.2d 1136 (5 Cir.1977). The primary function of tenure is the preservation of academic freedom. North Dakota State Board of Higher Education Policy Manual, Regulations on Academic Freedom, Tenure, and Due Process, § 605(A)(1)(b) and (B)(1)(b). See also, Developments in the Law—Academic Freedom, 81 Harv.L.Rev. 1045, 1049 (1968).

**2.** This was an inappropriate standard of review. The court cited *Dobervich v. Central Cass Public School District,* 302 N.W.2d 745 (N.D.1981), as limiting its scope of review to a determination if MSC had abused its discretion in reaching the decision to terminate Stensrud. However, *Dobervich* involved the nonrenewal of a public school teacher and thus the nonrenewal procedures were specifically governed by NDCC § 15–47–38. In this case there are no similar statutory requirements. Rather, the terms of Stensrud's employment contract govern the manner in which she may be terminated.

MSC because she raised genuine issues of material fact. It is not inconsistent for Stensrud to maintain there are issues of fact present if the court should adopt MSC's legal theories and at the same time concede there are no factual issues if the court should adopt her theory of law. *Biby v. Union National Bank of Minot*, 162 N.W.2d 370 (N.D.1968).

■ Stensrud initially claims that MSC violated the terms of her employment contract by applying the wrong State Board of Higher Education regulations to her termination proceedings. State Board of Higher Education regulations are considered part of the employment contract between an institution and faculty members. See, *Sacchini v. Dickinson State College*, 338 N.W.2d 81 (N.D.1983). The regulations followed in the Stensrud termination proceedings were enacted on March 11, 1983, after Stensrud had executed her 1982–1983 employment contract. Stensrud asserts that because these regulations were enacted after she signed her contract, they could not be incorporated into her contract and thus were not applicable to her situation. Rather, Stensrud argues, the regulations in effect when her 1982–1983 contract was signed, and therefore properly part of her contract, should have governed her termination proceedings.

■ Stensrud's claim is without merit because both sets of regulations provide for substantially similar termination proceedings. Indeed, the regulations applied in this case afforded Stensrud greater protection than the earlier regulations. In effect, Stensrud argues that the trial court's decision should be reversed because it applied regulations which were more favorable to her. Such an argument cannot constitute a ground for reversal. See *State v. Meyer*, 361 N.W.2d 221, 223 n. 3 (N.D.1985).

Stensrud further asserts that MSC's failure to comply with § 605(C)(2), which required President Schobel to notify Stensrud

of her termination in writing, made her termination invalid. President Schobel did not give Stensrud a written termination notice, although he did meet with her personally two days after she received her terminal contract to discuss the reasons for her termination.[3] Thus, MSC failed to strictly comply with § 605(C)(2) in that President Schobel's termination notice to Stensrud was oral rather than written.

■ Generally, substantial compliance with the procedural requirements for termination is sufficient if their purpose is fulfilled. *Piacitelli v. Southern Utah State College*, 636 P.2d 1063 (Utah 1981); see also, *Quarles v. McKenzie Public School District No. 34*, 325 N.W.2d 662 (N.D. 1982); *State ex rel. Norton v. Stone*, 313 S.E.2d 456 (W.Va.1984); *Lee v. Big Flat Public Schools*, 280 Ark. 377, 658 S.W.2d 389 (1983); and *Commeret v. Board of Ed. of Jenison Public Schools*, 75 Mich.App. 115, 254 N.W.2d 808 (1977). We endorse the rationale articulated in *Piacitelli*:

> "While exact conformance with the precise terms of the termination procedures is doubtless the least controversial course, so long as the substantial interests those procedures are designed to safeguard are in fact satisfied and protected, failure to conform to every technical detail of the termination procedure is not actionable." *Piacitelli* at 1067.

The purpose of the regulation requiring President Schobel to notify Stensrud in writing of her termination is to ensure receipt of reasonable notice from the responsible person, so that she could implement the subsequent procedural rights available to her with full knowledge of the identity of the person responsible for the decision to terminate.

Two days after receiving her terminal contract which necessarily gave her notice of her termination, Stensrud met personally with President Schobel and discussed the reasons for her termination. Stensrud

---

**3.** A terminal contract indicates a teacher's employment will terminate at the conclusion of the next academic year.

then availed herself of all the subsequent procedural rights afforded her by the regulations. The trial court concluded that Stensrud had the opportunity to present her case and "was not prejudiced" by MSC's lack of compliance with the termination procedures. In effect, the trial court interpreted the regulations to conclude as a matter of law that their purpose had been fulfilled.

■■■■ Although the interpretation of regulations to ascertain their purpose is a question of law, *Carmona v. Division of Industrial Safety*, 13 Cal.3d 303, 118 Cal. Rptr. 473, 530 P.2d 161 (1975); *Ind. Dept. of Pub. Wel. v. Chair Lance Serv. Inc.*, 448 N.E.2d 1216 (Ind.App.1983), the determination of whether conduct is in substantial compliance with these regulations, *i.e.*, whether their purpose is effectuated, is a question of fact. *Piacitelli, supra; Big Flat Public Schools, supra.* Ordinarily, because a determination of substantial compliance requires factual findings, summary judgment would be improper. *Albers v. NoDak Racing Club, Inc.*, 256 N.W.2d 355, 358 (N.D.1977).

In the present case, Stensrud agrees that "the key protection [of the regulations] is that the teacher is entitled to learn what the reasons for the action are, is entitled then to ask for reconsideration, and is entitled to ask for a Special Review Committee."

■■■ The facts are undisputed that Stensrud (1) learned the reasons for her termination, (2) asked for and received reconsideration from the president, and (3) asked for and received consideration from the Special Review Committee. Although Stensrud disputes the propriety of these procedures, we conclude, as a matter of

law, that they were proper, and that there remain no material facts to be resolved.[4]

■■■ Following receipt of her terminal contract, Stensrud requested written confirmation and reconsideration of the reasons for her termination. Section 605(C)(2) required MSC to advise Stensrud of the reasons which contributed to the decision to terminate her employment. Stensrud discussed the reasons for her termination during her personal conference with President Schobel. Stensrud contends MSC had to advise her of these reasons in writing. However, § 605(C)(2) specifies no such requirement and Stensrud provides no authority supporting her contention. We conclude § 605(C)(2) did not require MSC to inform Stensrud of the reasons for her termination in writing. Therefore, MSC's obligation under this regulation was fulfilled when President Schobel met personally with Stensrud.

On August 3, 1983, after she had signed her terminal contract, Stensrud requested reconsideration pursuant to § 605(C)(2). President Schobel confirmed his decision to terminate on the ground that Stensrud offered no new information supporting her petition for reconsideration. Stensrud then requested, as was her right under § 605(C)(3), the formation of a Special Review Committee to review President Schobel's decision.

■■■ State Board of Higher Education regulations require that the "faculty governance" structure at MSC provide for a Special Review Committee to review allegations that a decision terminating a teacher's employment was based upon "inadequate consideration." Stensrud asserts she is entitled to summary judgment because, as a matter of law, there was no valid faculty governance structure at MSC

---

**4.** Our adherence to the principle of substantial compliance is not inconsistent with such prior decisions as *Pollock v. McKenzie County Public School District No. 1*, 221 N.W.2d 521 (N.D. 1974), and *Lambott v. United Tribes Educational Tech. Center*, 361 N.W.2d 590 (N.D.1985), because in those cases there was not substantial compliance with the termination procedures. In *Pollock,* the school board's failure to follow

the notice requirements was such that this Court concluded that in effect no notice of nonrenewal was given to the teacher. *Pollock* at 526. In *Lambott,* this Court's conclusion that there was no substantial compliance with the termination procedures was premised on the employee's failure to receive proper notice. In both cases the purposes of the procedures under scrutiny were not fulfilled.

and her termination was thus invalid. Stensrud further argues that if there were a faculty governance at MSC, then there remains a genuine issue of material fact over whether or not the MSC faculty association organization constitutes the faculty governance. These two arguments are, in essence, the same and we will treat them as one. Although the regulations do not define faculty governance, the trial court found as an undisputed fact that the MSC faculty association constituted the faculty governance structure.[5]

The MSC faculty association was established by the school Constitution to assist in determining institutional policy, including matters of tenure and dismissal. The faculty association is the only organization at MSC which could fulfill the function of a faculty governance structure. Therefore, there could be no factual dispute that the faculty association constituted the faculty governance structure at MSC. Stensrud cannot tenably argue that no faculty governance structure exists at MSC, but rather asserts that the faculty association, as comprised, does not constitute a *valid* faculty governance structure.

Stensrud maintains the faculty association is not a faculty governance structure because its membership includes the MSC president, who, Stensrud argues, cannot be a member of the faculty. However, the MSC Constitution explicitly includes its president as a member of the faculty association. Furthermore, North Dakota Century Code § 15–10–13 provides that the faculty includes the president. Stensrud argues that NDCC § 15–10–13 is limited in application to Ch. 15–10 but offers no authority to support this contention.

Chapter 15–10 generally sets out the powers and duties of the State Board of Higher Education, which include the authority to adopt regulations for governing institutions such as MSC. Section 15–10–13 defines who is a faculty member and further provides the faculty shall adopt rules and regulations for the government

of the school. A reasonable reading of Chapter 15–10 indicates that it applies in this case, as does the legislative definition of what comprises a "faculty." See NDCC §§ 1–02–02, 1–02–03; *Balliet v. North Dakota Work. Comp. Bureau*, 297 N.W.2d 791 (N.D.1980); 1A Sutherland, Statutory Construction, § 27.02 (4th ed.); see, *e.g., State v. Sadowski*, 329 N.W.2d 583 (N.D. 1983). Accordingly, as a matter of law, the faculty association constitutes the faculty governance structure at MSC in compliance with State Board of Higher Education regulations.

■ Stensrud's final assertion is that the Special Review Committee, even if duly comprised, failed to properly review President Schobel's decision to terminate to ensure it was reached only after "adequate consideration" in terms of relevant standards of the institution.

Section 605(C)(3) outlines the Special Review Committee's function:

"If within sixty calendar days after receipt of notice of [termination], the faculty member alleges that the [termination] decision was based on inadequate consideration, a Special Review Committee shall review the faculty member's allegations and determine whether the decision was the result of inadequate consideration i⁻ terms of relevant standards of the institution. The term 'inadequate consideration' shall be interpreted to refer to procedural rather than substantive issues and shall not mean that the Special Review Committee should substitute its own judgment on the merits of whether the faculty member should be reappointed or given tenure. If the Special Review Committee believes that adequate consideration was not given, it shall request reconsideration, indicating the respects in which it believes the consideration may have been inadequate...."

The Special Review Committee's report set out its members' understanding of their duties under § 605(C)(3):

---

**5.** We have determined this finding is properly labeled a conclusion of law and we will treat it as such on appeal. *Metric Const. v. Great Plains Properties,* 344 N.W.2d 679 (N.D.1984).

"The duties of a special review committee are carefully stated. Such a committee is to determine if procedures have been followed, and if denial of tenure resulted from an inadequate consideration of the faculty member's record. In other words, did the person making the decision to deny tenure judge the complainant in light of the relevant standards of the institution? Under no circumstances are the members of a special review committee to make an independent evaluation of the complainant's qualifications and attempt to substitute their judgment for the judgment of the President."

Stensrud maintains § 605(C)(3) should be interpreted to require the Special Review Committee to "decide if the President ... gave real and adequate thought to the decision to nonrenew [her] and review all the pertinent information." Stensrud argues that two of the four reasons [6] for terminating her were invalid and of little importance and thus the Special Review Committee should have returned this matter to him for further consideration.

We find Stensrud's argument unconvincing. Stensrud does not dispute that the Special Review Committee did in fact review the procedures followed by MSC in determining if the termination was based on inadequate consideration. Stensrud acknowledges the Special Review Committee was without authority to substitute its own judgment on the merits of her termination. Furthermore, she admits that at least two of the four reasons for her termination would be sufficient to justify the nonre-

newal were such justification necessary. In light of the circumstances that President Schobel possessed broad-ranging authority to terminate a non-tenured teacher such as Stensrud, and that the Special Review Committee's authority was confined to reviewing the procedure followed, and that the committee did review the procedure followed, it is clear the Special Review Committee properly carried out its responsibilities under § 605(C)(2).[7]

We conclude, as a matter of law, that MSC complied with its contractual obligations in terminating Stensrud.

Accordingly, we affirm the judgment of the district court.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

---

**6.** President Schobel based his decision to terminate Stensrud on four factors: (1) student evaluation which placed Stensrud in the bottom one-fifth of the faculty; (2) inconsistent coaching performance and record; (3) lack of contribution to the gymnastic program; and (4) failure to participate in extracurricular events. Schobel stated in a deposition that factors 1 and 2 were the most important in influencing his decision to terminate Stensrud.

**7.** The Special Review Committee's report stated:
"It appeared to members of the committee that neither the complainant nor the president had followed the precise order of steps nor