Mildred HOM, Plaintiff and Appellant,

v.

STATE of North Dakota, a public corporation, d/b/a Dickinson State University, Defendant and Appellee.

Civ. No. 900079.

Supreme Court of North Dakota.

Aug. 9, 1990.

Chapman & Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman.

Rick D. Johnson (argued), Sp. Asst. Atty. Gen., Fargo, for defendant and appellee.

MESCHKE, Justice.

Mildred Hom appealed from a judgment dismissing her action against the State of North Dakota, doing business as Dickinson State University ["DSU"], for breach of her employment contract. We reverse and remand for further proceedings consistent with this opinion.

Hom was a non-tenured, probationary faculty member at DSU. On June 8, 1985, Hom received a terminal contract from DSU for the 1985–1986 academic year. A terminal contract includes a notice that the teacher's employment will terminate at the conclusion of the next academic year. *See Stensrud v. Mayville State College*, 368 N.W.2d 519, 522 n. 3 (N.D.1985).

■ Termination of faculty members is governed by regulations adopted by the State Board of Higher Education as part of its Policy Manual. These regulations are part of the employment contract between the institution and faculty member. *See Stensrud*, 368 N.W.2d at 522; *Sacchini v. Dickinson State College*, 338 N.W.2d 81, 84 (N.D.1983). The relevant regulation in this case is Section 605, entitled Regulations on Academic Freedom, Tenure, and Due Process. Pursuant to this regulation, Hom was entitled to notice of nonrenewal twelve months before expiration of her appointment. The terminal contract received in June 1985 gave this notice.

The regulations establish an expedited process for institutional review. Within seven days after receipt of the notice of nonrenewal, the faculty member may request written reasons for the decision to terminate. The institution must supply reasons within seven days of receipt of the request. The faculty member then has fifteen days to request reconsideration of the decision to terminate, and the institution must respond within fifteen days. Within sixty days after receipt of the notice of nonrenewal the faculty member may request review by a Special Review Committee, but this review is limited to procedural issues, and the Special Review Committee is specifically prohibited from reviewing the merits of whether the faculty member should be reappointed.

On the same day she received her terminal contract containing the notice of nonrenewal, Hom wrote to DSU requesting written reasons for the decision to terminate her employment. DSU did not respond. On August 10, 1985, Hom again requested reasons. DSU again ignored her request. On January 16, 1986, over seven months after her first request for reasons, DSU finally furnished Hom with the reasons for her termination.

Hom subsequently sued DSU for breach of contract. After a trial, the trial court determined that DSU's delivery of reasons in January 1986 constituted substantial compliance with the regulations. The court thus concluded that DSU had not breached the contract and dismissed Hom's action. Hom appealed.

Hom argues that the trial court's finding that DSU substantially complied with the regulations is clearly erroneous. We agree.

We first embraced the substantial compliance doctrine in the context of these regulations in *Stensrud*. In that case, the college president, rather than responding in writing to Stensrud's request for reasons, met with her and orally advised her of the reasons for her nonrenewal. Stensrud then instituted the procedures for institutional reconsideration and review by a Special Review Committee. When her nonrenewal was upheld, Stensrud sued the college, alleging that the oral statement of reasons did not comply with Section 605 of the Policy Manual, which requires that the reasons be given in writing.

In affirming a summary judgment dismissing Stensrud's action, we endorsed the substantial compliance rule:

Generally, substantial compliance with the procedural requirements for termination is sufficient if their purpose is

fulfilled.... We endorse the rationale articulated in *Piacitelli* [*v. Southern Utah State College*, 636 P.2d 1063, 1067 (Utah 1981)]:

> While exact conformance with the precise terms of the termination procedures is doubtless the least controversial course, so long as the substantial interests those procedures are designed to safeguard are in fact satisfied and protected, failure to conform to every technical detail of the termination procedure is not actionable.

*Stensrud*, 368 N.W.2d at 522. Noting that the purpose of the notification requirement "is to ensure receipt of reasonable notice from the responsible person, so that [the faculty member] could implement the subsequent procedural rights available to her with full knowledge of the identity of the person responsible for the decision to terminate," we agreed with the trial court that the president's oral notification of the reasons for nonrenewal, allowing Stensrud to implement the reconsideration and review procedures, constituted substantial compliance with the regulations.

■ The trial court in this case concluded that the primary purpose of the regulation requiring DSU to supply written reasons for nonrenewal is to allow the faculty member to exercise her right to seek reconsideration and review. The court further found that DSU's delivery of reasons in January 1986 substantially complied with the regulations. The trial court's interpretation of the regulations to ascertain their purpose is a question of law which is fully reviewable by this court on appeal, whereas the determination whether DSU's conduct was in substantial compliance with the regulations, *i.e.* whether their purpose has been effectuated, is a question of fact. *Smith v. State*, 389 N.W.2d 808, 810 (N.D. 1986); *Stensrud*, 368 N.W.2d at 523. Although the trial court's determination of the purpose of the regulations is correct so far as it goes, it is incomplete.

■ The regulations include a well-delineated timetable requiring an expedited review procedure. Each step in the process must be completed in a matter of days, and the entire procedure is to be completed within a few months. As a result, both the faculty member and the institution are guaranteed an early resolution of the matter to allow each ample time to make future plans. This is an important right, not to be indifferently disregarded. We conclude that the purpose of the regulation requiring written notice of the reasons for nonrenewal within seven days is to allow the faculty member to promptly implement the review procedure.

■ DSU's violation of the regulations in this case was more significant than the technical violation of the regulations which occurred in *Stensrud*. Stensrud received timely notification, albeit by a different method than specified, of the reasons for her nonrenewal. Our affirmance of the trial court's determination that there had been substantial compliance with the regulations was premised upon the fact that Stensrud was able to seek timely review and reconsideration of the decision to terminate and thus was not prejudiced by the deviation from the specified procedure.

The lengthy delay in this case did prejudice Hom. Until she received a final resolution of her dispute with DSU, Hom did not know whether to seek employment elsewhere or gamble on being reinstated at DSU. Her future was placed in limbo while DSU waited over seven months to submit a response that was due within seven days.

DSU asserts that Hom was not prejudiced because she could have sought to implement the reconsideration and review procedures in June of 1985 without the written reasons. Hom could not, however, make an intelligent decision whether to seek further review until she was apprised of DSU's reasons. The review procedures set forth in the regulations contemplate an orderly, specified process through which the issues are clarified and the respective parties' positions are made known, thereby facilitating methodical review. In this context, the written reasons required of the institution serve much the same purpose as pleadings in a civil action, framing the is-

sues and the parties' positions. Requiring Hom to seek further review before she received DSU's reasons for nonrenewal would be akin to requiring a party in a lawsuit to file an answer without an opportunity to first examine the complaint.

DSU also asserts that Hom should have sought further review when she finally received the written reasons in January 1986. While this may be relevant to the amount of damages for the breach, it does not affect liability. By January 1986 the damage had already occurred. Hom had been deprived of her right to a speedy resolution of the dispute so she could have the maximum time available to seek other employment if the decision to nonrenew was upheld.

DSU also contends that Hom suffered no prejudice because the trial court found that she "knew or should have known" what the reasons for nonrenewal were. However, as we have pointed out, the purpose of the regulation requiring written reasons is to allow the faculty member to promptly implement the review and reconsideration procedures. Certainly the faculty member cannot be expected to speculate about the reasons for dismissal and to defend against those hypothetical reasons before a Special Review Committee. We reiterate that the faculty member can only determine the feasibility of seeking further review when she has learned the institution's position.

The trial court's finding of substantial compliance was induced by its erroneous determination of the primary purpose of the regulation. We noted in *Stensrud*, 368 N.W.2d at 522, that, in assessing whether there has been substantial compliance, the court is to determine whether the substantial interests that the regulations were designed to safeguard are in fact satisfied and protected. Hom's substantial interest in a timely resolution of the dispute, within the framework of the review procedure specified in the regulations, was not adequately protected when over seven months inexplicably elapsed before DSU responded to her request for reasons.

The trial court's finding that DSU's actions were in substantial compliance with the regulations was a result of the court's failure to give credence to the importance of timeliness as an essential purpose of the regulations. Findings of fact which are induced by an erroneous view of the law are clearly erroneous. *E.g., Knudtson v. McLees*, 443 N.W.2d 903, 904 (N.D.1989); *Mertz v. Mertz*, 439 N.W.2d 94, 96 (N.D. 1989). We therefore conclude that the trial court's finding of substantial compliance was clearly erroneous.

The trial court determined, in the alternative, that the delay in providing written reasons was a minor, technical breach which resulted in no actionable injury to Hom. Although a court may ignore "trifling departures" in the performance of a contract, *see, e.g.*, Restatement (Second) of Contracts § 235 comment *a*, § 236 comment *a* (1981), we cannot understand how a seven month delay in providing reasons due within seven days, and the corresponding delay in Hom's opportunity to seek further review or other employment, can be a "trifling departure."

Hom has asserted that she was never properly terminated, and therefore her damages are continuing. However, when Hom received notice of the reasons for dismissal in January 1986 she did not seek further review. Hom does not argue that she was unable to seek review at that time, but asserts that she did not want to waive any rights by submitting to review at that late date. Had she sought review at that time, however, she would have received a resolution of the matter and would either have been reinstated or been free to seek other employment. In either case, she could have at that point mitigated her damages. While we agree that DSU has breached the contract, and that Hom has been damaged thereby, we do not agree that there is a continuing breach until the present time. DSU's breach resulted in a seven month delay in the review process, and DSU is liable for those damages occasioned by the seven month delay.

We reverse the trial court judgment dismissing Hom's action. We remand for entry of judgment on liability against DSU and for further proceedings to determine damages in accordance with this opinion.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.