# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 95

Dr. Frank P. Cuozzo,                              Plaintiff and Appellant

v.

State of North Dakota d/b/a University of
North Dakota, and its President, Mark R. Kennedy,      Defendants and Appellees

No. 20180337

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Jay D. Knudson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Leo F.J. Wilking, Fargo, ND, for plaintiff and appellant.

Courtney R. Titus (argued) and Matthew A. Sagsveen (appeared), Office of Attorney General, Bismarck, ND, for defendants and appellees.

# Cuozzo v. State, d/b/a University of North Dakota
## No. 20180337

**Crothers, Justice.**

[¶1]  Frank Cuozzo appeals from a judgment dismissing his breach of contract action against the State, doing business as the University of North Dakota (UND), and its president Mark Kennedy.  We affirm the judgment, concluding Kennedy substantially complied with his contractual obligations in terminating Cuozzo's employment.

I

[¶2]  Cuozzo was a tenured faculty member in UND's Anthropology Department.  After failing to inform his department of convictions for driving under the influence and driving with a revoked license, Cuozzo was placed on a performance improvement plan which he subsequently violated.  On January 30, 2017, Cuozzo was terminated from his position and he filed a formal grievance.  The Standing Committee on Faculty Rights held a hearing and issued a four-page report finding there was clear and convincing evidence of adequate cause to terminate Cuozzo, but recommending that he be allowed to resign instead of being terminated for cause.  The Standing Committee submitted its findings and conclusions to Kennedy.

[¶3]  Four days after receiving the report, Kennedy wrote a letter to Cuozzo stating:

> "I have carefully reviewed the Standing Committee on Faculty Rights (SCoFR) report in the matter of your appeal of the University's decision to terminate you for adequate cause.  I value and respect the time and effort of the SCoFR members in reviewing this matter, and I appreciate their service to the University.
> "The committee voted unanimously that the University provided clear and convincing evidence, overall, to substantiate your dismissal with cause.  I am upholding the University's initial decision to terminate you for adequate cause.
> "My decision is final and this matter is now concluded."

1

[¶4]    Cuozzo responded to Kennedy's letter and complained about "such a quick decision," alleging Kennedy failed to comply with the UND Faculty Handbook relating to dismissals which stated "[t]he president shall make a decision and provide written notice of the decision, including findings of fact and reasons or conclusions based on the hearing record."  Kennedy replied to Cuozzo's complaint in an email:

> "I am writing in response to your May 24, 2017 letter, which you provided as a written response to my decision to uphold the University's decision to terminate you for adequate cause.
> "I fully considered the Standing Committee on Faculty Rights (SCoFR) report.  As stated in my May 16, 2017 letter, the committee voted unanimously that the University provided clear and convincing evidence, overall, to substantiate your dismissal with cause.  I relied on this finding of SCoFR in my decision to uphold the University's initial decision to terminate your [sic] for adequate cause.  A finding that your behavior amounted to adequate cause for termination warrants a termination, not a resignation.
> "My decision is final and this matter is now concluded.  Please do not use UND letterhead for any future communications."

[¶5]    Cuozzo sued UND and Kennedy claiming they breached his employment contract because Kennedy failed to review the hearing record and make his own findings and conclusions.  On cross-motions for judgment on the pleadings, the district court dismissed the action, concluding as a matter of law that UND and Kennedy substantially complied with their obligations under the employment contract and, even if they had not complied, that Cuozzo would be unable to establish any damages resulted from the alleged breach.

II

[¶6]    Cuozzo argues the district court erred in ruling UND and Kennedy substantially complied with their obligations under the employment contract.

[¶7]    Because the parties and the court relied on matters outside the pleadings, we treat the motions for judgment on the pleadings under N.D.R.Civ.P. 12(b)(6) as motions for summary judgment under N.D.R.Civ.P. 56.  *See, e.g., Mills v. City of*

2

*Grand Forks*, 2012 ND 56, ¶ 7, 813 N.W.2d 574. The standard for reviewing summary judgments is well established:

> "Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record."

*Dahms v. Nodak Mut. Ins. Co.*, 2018 ND 263, ¶ 6, 920 N.W.2d 293 (quoting *Pettinger v. Carroll*, 2018 ND 140, ¶ 7, 912 N.W.2d 305).

[¶8] Termination of university faculty members is governed by Board of Higher Education policies, rules and regulations adopted as part of its policy manual, and those provisions are part of the employment contract between the institution and the faculty member. *See, e.g.*, *Ellis v. N.D. State Univ.*, 2009 ND 59, ¶ 36, 764 N.W.2d 192; *Sacchini v. Dickinson State Coll.*, 338 N.W.2d 81, 84 (N.D. 1983). Interpretation of a written contract to determine its legal effect is a question of law, and "summary judgment is proper only when a case involves contract interpretation and no genuine issues of material fact exist." *Stensrud v. Mayville State Coll.*, 368 N.W.2d 519, 521 (N.D. 1985). The Board of Higher Education policy at issue, § 605.4(11), which is identical to its corresponding provision in the UND Faculty Handbook, provides:

"11. The Committee's findings of fact, conclusions and recommendations, with supporting reasons, shall be reported, in writing, to the institution's president and the faculty member or the faculty member's representative. If the institution's action was a notice of dismissal and if the Committee concludes that adequate cause for dismissal has been established, but that a lesser penalty would be more appropriate, it may so recommend with supporting reasons. The president shall make a decision and provide written notice of the decision, including findings of fact and reasons or conclusions based on the hearing record, to the Committee and the faculty member within twenty calendar days of receiving the report. The faculty member or Committee may, within ten calendar days of the decision, submit a written response to the decision, to which the president may reply."

(Emphasis added.) Cuozzo does not argue that UND produced insufficient evidence to terminate him for cause or that Kennedy erred in not allowing him to resign. Rather, he contends his employment contract was breached because Kennedy failed to review the hearing record and make his own findings and conclusions.

[¶9] Generally, substantial compliance with the procedural requirements for termination is sufficient if their purpose is fulfilled. *See Hom v. State*, 459 N.W.2d 823, 824-25 (N.D. 1990); *Smith v. State*, 389 N.W.2d 808, 810 (N.D. 1986); *Stensrud*, 368 N.W.2d at 522. "'While exact conformance with the precise terms of the termination procedures is doubtless the least controversial course, so long as the substantial interests those procedures are designed to safeguard are in fact satisfied and protected, failure to conform to every technical detail of the termination procedure is not actionable.'" *Stensrud*, at 522 (quoting *Piacitelli v. S. Utah State Coll.*, 636 P.2d 1063, 1067 (Utah 1981)).

[¶10] In *Stensrud* a probationary nontenured instructor was terminated from employment. 368 N.W.2d at 520. Stensrud asserted the college failed to comply with a policy requiring the college president to notify her in writing of the termination. *Id.* at 522. Noting the purpose of the regulation was for the president to notify her of the termination so she could implement subsequent procedural rights, we held substantial compliance occurred because the president met personally with her,

4

discussed the reasons for her termination, and she availed herself of all subsequent procedural rights. *Id.* at 522-23.

[¶11] In *Smith* a terminated university professor claimed noncompliance with her department's evaluation procedures which required evaluations be given at the end of each semester, and her second evaluation occurred earlier. 389 N.W.2d at 810. This Court determined the purpose of the evaluation procedure was to inform faculty members of their performance and provide the university relevant information on whether a faculty member should be renewed, and substantial compliance occurred because no evidence showed the professor "was not apprised of her job performance because of the timing of the evaluations." *Id.*

[¶12] By contrast, in *Hom* a regulation required that a faculty member be given written reasons for a decision to terminate within seven days after the faculty member makes a request, and the university did not provide the faculty member reasons until more than seven months after her first request. 459 N.W.2d at 824. This Court held substantial compliance with the regulation did not occur because its purpose was to allow the faculty member to promptly implement the review procedure and the faculty member was prejudiced because her future was "placed in limbo while DSU waited over seven months to submit a response that was due within seven days." *Id.* at 825.

[¶13] In this case, we agree with the district court's summation of the regulation's purpose:

> "[T]he purpose of the regulation is to ensure the due process rights of the employee. It appears to the Court that the reasons for the regulations . . . is to ensure that faculty members are put on notice, are fully aware of the allegations supporting the termination, to ensure they are given a chance to have a fair hearing before the SCOFR, and to make sure the president of the university reviews and analyzes the facts and recommendation from the SOCFR [sic] and makes a final decision based upon the record."

[¶14] Although the determination of whether conduct is in substantial compliance with a regulation is ordinarily a question of fact, where the facts are undisputed, the issue becomes a question of law. *See Stensrud*, 368 N.W.2d at 523. We reject Cuozzo's argument that Kennedy failed to consider or analyze any facts or base his

5

decision on the hearing record simply because he did not independently make findings and conclusions.

[¶15] Because the Board of Higher Education is a constitutionally created body which invokes the separation of powers between the executive and judicial branches of government, we apply a limited standard of review to its decisions akin to our standard of review for administrative agency decisions. *See Ellis*, 2009 ND 59, ¶ 42, 764 N.W.2d 192; *Peterson v. N.D. Univ. Sys.*, 2004 ND 82, ¶¶ 13-14, 678 N.W.2d 163. In *Schultz v. N.D. Dep't of Human Servs.*, 372 N.W.2d 888, 891 (N.D. 1985), the appellant argued the executive director of the agency did not properly review all of the evidence before rejecting the recommendation of the hearing examiner because he was not present at the hearing and, at the time of his decision, a transcript of the hearing had not been prepared. We observed:

> "An electronic recording of the hearing was available for review by the Executive Director. The Executive Director stated in his findings, conclusions, and decision that 'the evidence of record in this proceeding has been considered and appraised. The recommended findings of fact and conclusion of law submitted by the hearing officer have been thoughtfully and carefully examined and are not adopted in this instance.' Other than this statement, the record does not reflect the extent of the Executive Director's review."

*Id.* After noting each member of an administrative agency is not required "to read each word of the record and examine each exhibit it introduced before disposing of the issues before the agency," we said:

> "The administrive officer deciding a case need not actually hear the witnesses testify or hear oral argument, but the officer deciding the case must consider and appraise the evidence before reaching a decision. *Morgan v. United States*, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936); 3 Davis, Administrative Law, § 17:2 (2d Ed. 1980). Although a hearing examiner has the advantage of hearing and seeing witnesses testify, an agency may reject the examiner's decision even on a question involving the credibility of contradictory witnesses. 3 Davis, Administrative Law, § 17:16. A court's review of an agency decision does not include probing an agency decisionmaker's mental process if a hearing was given as required by law. *Morgan v. United States*, 304 U.S. 1, 58 S.Ct. 773, 82

6

L.Ed. 1129 (1938); 3 Davis, Administrative Law, § 17:16; Annot., 18 A.L.R.2d 606, 623 (1951).

"The record reflects that a hearing was conducted as required by law and that the Executive Director stated that he considered and appraised the hearing officer's findings and conclusions. Simply because the Executive Director rejected the hearing officer's recommendation does not imply that the Executive Director did not consider and appraise the record. Section 31-11-03(15), N.D.C.C., provides a rebuttable presumption that an official duty has been performed regularly. Nothing in the record rebuts the presumption that the Executive Director regularly performed his duty and considered and appraised the record. We do not believe it is appropriate to probe the Executive Director's mental process in arriving at his decision. Our inquiry is limited to a review of the findings, conclusions, and decision of the agency under the appropriate standard of review."

*Id.* at 892. *See also Houn v. Workforce Safety and Ins.*, 2005 ND 115, ¶¶ 5-7, 698 N.W.2d 271; *Speedway, Inc. v. Job Serv. N.D.*, 454 N.W.2d 526, 527-28 (N.D. 1990). Here, the separation of powers doctrine permits a judicial determination whether Kennedy's review of the record satisfied the contractual obligation to Cuozzo. *See Seher v. Woodlawn Sch. Dist. No. 26*, 59 N.W.2d 805, syllabus at 2 (N.D. 1953) ("A school board's dismissal of a teacher is the exercise of an executive function; but whether the dismissal constituted a breach of the teacher's contract is for judicial determination."). However, that same doctrine does not permit judicial examination of Kennedy's mental process in arriving at his decision. *Id.*

[¶16] Kennedy did not provide written "findings of fact and reasons or conclusions based on the hearing record," as required by the regulation. Nor did Kennedy expressly adopt the Standing Committee's findings and conclusions. However, Kennedy's initial decision and his response to Cuozzo's objection can only be interpreted as an adoption of the Standing Committee's findings and conclusions that clear and convincing evidence supported Cuozzo's termination for cause. Cuozzo does not dispute any of the Standing Committee's findings and conclusions. The regulation's purpose requiring a university president to make a final decision based on the evidence is not affected by the president's adoption of the Standing Committee's findings and conclusions. To hold Cuozzo's termination improper and

7

remand this case for preparation of written findings and conclusions would under the circumstances exalt form over substance. *See, e.g., Quarles v. McKenzie Pub. Sch. Dist. No. 34*, 325 N.W.2d 662, 669 (N.D. 1982) (court would "exalt form over substance" if it invalidated teacher's nonrenewal because school board failed to provide seven day continuance guaranteed by statute where teacher failed to assert denial of continuance harmed her).

[¶17] We conclude Kennedy and UND substantially complied with their contractual obligations in terminating Cuozzo's employment.

III

[¶18] Because of our disposition of this case, it is unnecessary to address other arguments raised. The judgment is affirmed.

[¶19] Daniel J. Crothers
Lisa Fair McEvers
Jon J. Jensen
Gerald W. VandeWalle, C.J.

**Tufte, Justice, dissenting.**

[¶20] I respectfully dissent.

[¶21] "All contracts, whether public or private, are to be interpreted by the same rules, except as otherwise provided by the laws of this state." N.D.C.C. § 9-07-01. The contract term at issue here was not a negotiated term but became part of the agreement by virtue of being the law of the land in existence at the time the contract was made. *Bindas v. Bindas*, 2019 ND 56, ¶ 14 (citing cases). Interpreting regulatory requirements implied in an employment contract, we explained that "the interpretation of regulations to ascertain their purpose is a question of law" and "the determination of whether conduct is in substantial compliance with these regulations, i.e., whether their purpose is effectuated, is a question of fact." *Stensrud v. Mayville State College*, 368 N.W.2d 519, 523 (N.D. 1985) (citations omitted). To determine the purpose of the clause at issue here, the district court appears to have viewed the clause in context to assess what its essential benefit was to Cuozzo. *See Martel v. Bulotti*, 65

P.3d 192, 196 (Idaho 2003) (determining "essential benefit" provided to party by contract clause).

[¶22] Although the district court correctly identified the essential benefit of the contractual provision at issue, it misconstrued its plain language describing the obligation placed on President Kennedy. The court stated:

> The policy states that the president shall include "Findings of Fact and Reasons OR Conclusions based on the hearing record." The wording of this specific statute does not necessarily require the president to make findings of fact. It allows the president of the university to make findings of fact and reasons or to make conclusions, either of them based upon the hearing record. Kennedy made conclusions in his letter and e-mail, and stated these conclusions were made after consideration of the SFOCR report.

To interpret the term "findings of fact and reasons or conclusions," the court has to decide whether "and" comes before "or," an instance of the general problem called order of operations in mathematics and computer programming. *See generally* https://en.wikipedia.org/wiki/Order_of_operations. Depending on whether the "and" or the "or" takes precedence, this phrase means either (a) "findings of fact" and "reasons or conclusions" or (b) "findings of fact and reasons" or "conclusions." The district court chose (b) and easily found Kennedy's perfunctory conclusion to satisfy the requirement. This is an implausible reading of the clause that all but eliminates the obligation of the university president to further the due process purposes of the clause.

[¶23] The district court went on to reason in the alternative that, even if findings of fact were required, Kennedy's letters indicated substantial compliance with the requirement because Cuozzo does not contest the findings made by SFOCR or whether they were sufficient to support his termination. President Kennedy made no findings based on the hearing record in his terse letter terminating Cuozzo. Without a showing of harm arising from President Kennedy's failure to provide "findings of fact and reasons or conclusions based on the hearing record," the Majority dismisses this procedural protection as form over substance. Majority, at ¶ 16. *Contra* N.D.C.C. § 1-02-05. But it is the very nature of due process to put form (process) over substance (results). By consistently following the form, the reliability of and

9

confidence in the results is enhanced. In *Hammond v. North Dakota State Personnel Bd.*, 345 N.W.2d 359, 364 (N.D. 1984), this Court reversed the district court and remanded with instructions that the State Personnel Board "review the evidence submitted and issue a redetermination, with findings and conclusions, based upon their review of the record." This Court explained in *Hammond* that it was the Board's duty to make findings and conclusions based on the evidence, and the Board's failure to do so "denied Hammond his right to a decision by the Board based upon a review of the record by the Board members." *Id.*

[¶24]   The decision maker (the Board in *Hammond* or President Kennedy here) need not review the entire record, but must "consider and appraise the evidence," either directly or in summary form. *Id.* (VandeWalle, J., concurring specially). Application of the rule stated in *Hammond* forecloses a finding that President Kennedy provided the required review and made his final decision based on the hearing record. The district court's finding that Kennedy substantially complied is thus clearly erroneous. Although there may not be provable damages traced to this failure, proof of damages is not before us on this appeal. I would reverse the district court and remand for findings by President Kennedy. If this process is too burdensome on our university presidents, the answer is to amend the policies and faculty handbooks that impose the burdensome process.

[¶25]   Jerod E. Tufte