Crothers, Justice.
[¶1] Ronald Smithberg appeals from a judgment ordering Smithberg Brothers, Inc., to purchase his interest in the family farm corporation for $169,985 and dismissing on summary judgment his other claims against the corporation and its remaining shareholders, Gary and James Smithberg. We conclude Ronald Smithberg raised genuine issues of material fact regarding his claims against the corporation and Gary and James Smithberg, and the district court erred in granting summary judgment dismissing those claims. The court's valuation of Ronald Smithberg's interest in the corporation is reversed because his interest cannot be valuated until his derivative claims on behalf of the corporation have been resolved. We reverse and remand for further proceedings.
I
[¶2] The Smithbergs are brothers who were shareholders in Smithberg Brothers, *214 Inc., formed under the Corporate Farming Law, N.D.C.C. ch. 10-06.1, and based in Divide County. A fourth brother, Craig Smithberg, was an original shareholder in the corporation. At that time, Craig and Gary Smithberg each owned a 26 percent interest and Ronald and James Smithberg each owned a 24 percent interest in the corporation. Craig Smithberg died in 2010, his widow was appointed personal representative of his estate, and negotiations ensued for the purchase of his interest in the corporation. James Smithberg eventually purchased that interest, resulting in him owning 50 percent, Gary Smithberg owning 26 percent, and Ronald Smithberg owning 24 percent of the corporation.
[¶3] Following disagreements with his brothers over farming operations and attempts to negotiate his own buyout from the corporation, Ronald Smithberg brought this action seeking damages and to have the corporation and his brothers purchase his shares at fair value. He sought damages and other relief under 13 theories of liability ranging from duties and remedies provided under the Business Corporation Act, N.D.C.C. ch. 10-19.1, to tort, contract and equitable claims. The defendants moved for summary judgment arguing that the statutory claims under N.D.C.C. ch. 10-19.1 were barred by the protection of minority shareholder provisions of N.D.C.C. § 10-06.1-26, and in the alternative, that no genuine issues of material fact supported the statutory, tort, contract or equitable claims.
[¶4] The district court granted summary judgment dismissing all claims for damages. The court ruled the nine statutory claims under the Business Corporation Act were barred as a matter of law by the protection of minority shareholder provisions of the Corporate Farming Law, and Ronald Smithberg failed to raise genuine issues of material fact to support the four tort, contract and equitable claims. The court also denied Ronald Smithberg's motions for reconsideration. After a bench trial to determine the value of Ronald Smithberg's interest in the corporation, the court ruled the appropriate valuation date was June 10, 2016, the date the action was commenced, accepted the defendants' expert witness's testimony that his 24 percent interest in the corporation was worth $169,985, and ordered the corporation to purchase his interest within 12 months or face dissolution.
II
[¶5] Ronald Smithberg argues the district court erred in granting summary judgment dismissing his claims for damages.
[¶6] The standard for reviewing summary judgments is well established:
"Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence *215 by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record."
Cuozzo v. State, 2019 ND 95, ¶ 7, 925 N.W.2d 752 (quoting Dahms v. Nodak Mut. Ins. Co., 2018 ND 263, ¶ 6, 920 N.W.2d 293 ).
[¶7] Ronald Smithberg sought damages or other relief under 13 separate theories of liability. The first nine were based on the Business Corporation Act, N.D.C.C. ch. 10-19.1: 1) breach of fiduciary duties under N.D.C.C. §§ 10-19.1-50, 10-19.1-51 and 10-19.1-60 ; 2) oppression under the same statutes; 3) accounting under the same statutes; 4) derivative claims and payment of expenses under the same statutes; 5) direct claims under the same statutes; 6) removal of directors under N.D.C.C. § 10-19.1-41.1 ; 7) illegal distributions under N.D.C.C. § 10-19.1-95 ; 8) corporate dissolution under N.D.C.C. § 10-19.1-105 ; and 9) dissenting shareholder rights under N.D.C.C § 10-19.1-87. The remaining four theories were equitable, contract and tort claims: 10) unjust enrichment; 11) breach of contract; 12) conversion; and 13) deceit (denominated as "deceit or fraud").
A
[¶8] The district court agreed with the defendants that N.D.C.C. § 10-06.1-26 "provides the sole remedy to minority shareholders of farming corporations" and dismissed the nine statutory claims under the Business Corporation Act.
[¶9] Section 10-06.1-26, N.D.C.C., provides:
"If a shareholder owns less than fifty percent of the shares of a farming or ranching corporation doing business under this chapter, and if the terms and conditions for the repurchase of those shares by the corporation or by the other shareholders are not set forth in the bylaws or the instrument which transferred the shares to the shareholder, or are not the subject of a shareholders' agreement or an agreement between that shareholder and the corporation, then the disposition of such shares must be determined by this section upon the withdrawal of the shareholder. Any shareholder who desires to withdraw from the corporation shall first offer the shares for sale to the remaining shareholders in proportion to the shares owned by them. If not all of the shareholders wish to purchase the shares, any one shareholder may purchase all of the shares of the withdrawing shareholder. If no shareholder desires to purchase the shares of a withdrawing shareholder, then the corporation may purchase the shares. If the corporation chooses not to purchase the shares of the withdrawing shareholder, then the withdrawing shareholder may sell the shares to any other person eligible to be a shareholder. If the withdrawing shareholder is unable to sell the shares to any other person eligible to become a shareholder, then the withdrawing shareholder may bring an action in district court to dissolve the corporation. Upon a finding that the withdrawing shareholder cannot sell the shares at a fair price, the court shall enter an order directing that the corporation itself or any or all of the remaining shareholders pro rata or otherwise shall have twelve months from the date of the court's order to purchase *216 the shares of the withdrawing shareholder at a fair price as determined by the court and that if the shares of the withdrawing shareholder are not completely purchased at said price, the corporation shall be dissolved and the assets of the corporation shall be first used to pay all the liabilities of the corporation with the remaining net assets to be distributed pro rata to the shareholders in proportion to their ownership of shares. For the purpose of this section, a fair price for the shares of the withdrawing shareholder must be determined as though the shares were being valued for federal gift tax purposes under the Internal Revenue Code."
[¶10] Section 10-06.1-13, N.D.C.C., provides:
"Chapter 10-19.1 is applicable to farming or ranching corporations, which have the powers and privileges and are subject to the duties, restrictions, and liabilities of other business corporations except when inconsistent with the intent of this chapter. This chapter takes precedence in the event of any conflict with the provisions of chapter 10-19.1."
On appeal, the defendants do not attempt to support their previous argument and the district court's ruling that the statutory claims under the Business Corporation Act are barred as a matter of law because of conflict with the Corporate Farm Law.
[¶11] Courts do not strive to find irreconcilable conflicts between statutory provisions. See, e.g., State ex rel. Dep't of Human Servs. v. N.D. Ins. Reserve Fund , 2012 ND 216, ¶ 12, 822 N.W.2d 38. "When statutes cover the same subject matter, we make every effort to harmonize and give meaningful effect to each statute without rendering one or the other largely useless." Richter v. Houser , 1999 ND 147, ¶ 15, 598 N.W.2d 193. The defendants and the district court failed to identify any irreconcilable conflict between the Business Corporation Act provisions and N.D.C.C. § 10-06.1-26. The court erred in dismissing Ronald Smithberg's statutory claims as a matter of law because of conflict with the Corporate Farm Law.
B
[¶12] The defendants argue the district court's dismissal of the statutory claims can nevertheless be upheld because Ronald Smithberg failed to raise a genuine issue of material fact to support those claims. Ronald Smithberg argues he raised a genuine issue of material fact to support those claims as well as his equitable, contract and tort claims.
[¶13] The defendants argue Ronald Smithberg offered only unsupported, conclusory allegations to support his claims. However, Ronald Smithberg filed a 64-page brief in opposition to the motion for summary judgment. The recitation of facts comprised the first 36 pages of the brief with citations to evidence in the form of deposition testimony, affidavits and other documents. He provided citation to pages and lines in depositions and other comparable documents. In summary, Ronald Smithberg alleges that the corporation was loosely run, with little adherence to corporate formalities. Craig Smithberg had been the corporation's only full-time employee receiving a $40,000 annual salary, and when the other brothers assisted, they were paid $12.50 per hour. According to Ronald Smithberg, after Craig Smithberg died in 2010, James and Gary Smithberg made themselves full-time salaried employees and began employing their family members. They were issued quarterly wage checks, used commodities as wages, and received vehicles and other items of personal property ultimately resulting in each receiving more than $120,000 in compensation per year, while Ronald Smithberg *217 received nothing. James and Gary Smithberg also received from the corporation "rent bonuses" in the amount of $125,000 each while Ronald Smithberg received nothing. According to Ronald Smithberg, after January 1, 2012, he was removed as an officer of the corporation and received no compensation from the corporation. During his unsuccessful efforts to negotiate a buyout, Ronald Smithberg alleges James and Gary Smithberg continued to receive substantial compensation and benefits from the corporation while he received nothing. Ronald Smithberg also argues his brothers breached an early buyout agreement.
[¶14] Viewed in the light most favorable to Ronald Smithberg, this evidence can be interpreted to show unauthorized actions and misuse of corporate funds by James and Gary Smithberg in an attempt to freeze Ronald Smithberg out of the corporation. Ronald Smithberg has raised genuine issues of material fact to support his statutory, equitable, contract and tort claims for relief.
[¶15] Ronald Smithberg's fourth theory of liability might assert derivative claims against the defendants on behalf of the corporation. In Schumacher v. Schumacher , 469 N.W.2d 793, 798 (N.D. 1991), we observed:
"As a matter of general corporate law, shareholders alleging injury to the corporation must bring an action on behalf of the corporation within the context of a derivative action.
....
"A well-recognized exception to the rule that a shareholder must bring a derivative action for claims alleging injury to the corporation is that in a closely held corporation a minority shareholder may bring a direct action, rather than a derivative action, if the shareholder alleges harm to himself distinct from that suffered by other shareholders of the corporation or breach of a special duty owed by the defendant to the shareholder."
(Citations omitted.) On remand, the district court must determine whether Ronald Smithberg's claims allege harm to himself distinct from that suffered by other shareholders or breach of a special duty owed by the defendant to him to support his direct claims against the corporation.
[¶16] We conclude the district court erred in granting summary judgment dismissing Ronald Smithberg's 13 claims for damages and other relief.
III
[¶17] Derivative actions are brought by a shareholder on behalf of a corporation to recover damages caused to the corporation. See Danuser v. IDA Mktg. Corp. , 2013 ND 196, ¶ 11, 838 N.W.2d 488. A successful shareholder derivative action results in damages payable to the corporation. See Junker v. Crory , 650 F.2d 1349, 1363 (5th Cir. 1981) ; Centrella v. Morris , 597 P.2d 958, 959 n. 2 (Wyo. 1979). Because the district court must determine whether Ronald Smithberg raised genuine issues of material fact supporting derivative claims on behalf of the corporation, the district court's valuation would be affected if he successfully litigated those claims. Consequently, the district court's valuation of Ronald Smithberg's interest in the corporation is reversed. Although the valuation is reversed, we address other issues likely to arise on remand. See, e.g., Nelson v. Nelson , 2018 ND 212, ¶ 16, 917 N.W.2d 479.
A
[¶18] Ronald Smithberg argues the district court erred in refusing to set *218 the valuation date of his interest in the corporation as December 31, 2011.
[¶19] Because N.D.C.C. § 10-06.1-26 is silent regarding the date of valuation, the parties agreed and the district court held that N.D.C.C. § 10-19.1-115(4)(a) applied. This statute provides in relevant part that "[t]he purchase price of any shares so sold must be the fair value of the shares as of the date of the commencement of the action or as of another date found equitable by the court." Id. The court ruled the appropriate valuation date was June 10, 2016, when the action was commenced, and rejected Ronald Smithberg's argument that equity required a valuation date of December 31, 2011. "We review a district court's decision whether or not to exercise its equitable powers under the abuse of discretion standard." Estate of Albrecht , 2018 ND 67, ¶ 23, 908 N.W.2d 135. "A court abuses its discretion only when it acts in an arbitrary, unreasonable or unconscionable manner; its decision is not the product of a rational mental process leading to a reasoned determination; or it misinterprets or misapplies the law." Id.
[¶20] Ronald Smithberg argues the earlier date should apply because he first sought to be bought out of the corporation in May 2012 and he has received no benefits from the corporation since January 1, 2012. However, the district court reasoned that it was Ronald Smithberg's fault for choosing to negotiate with his brothers for four years rather than pursue a valuation under N.D.C.C. § 10-06.1-26 in 2012 when the corporation was lucrative and commodity prices were high. The court noted Ronald Smithberg headed negotiations with his deceased brother's widow but failed to timely accept the estate's offer. The court noted Ronald Smithberg "voluntarily walked away from the corporation ... in May 2012" and proposed a buyout of one-third of the shares when he owned only 24 percent of the shares. The court also reasoned that the corporation is not in a financial position to purchase his shares at their 2012 value because of the decrease in the value of the corporation caused by low commodity prices, low yields, high seed and chemical costs, and depreciation of the corporation's equipment.
[¶21] On this record, the district court did not abuse its discretion in determining "equity does not call for a valuation date of December 31, 2011," and instead setting the valuation date as June 10, 2016, the date the action was commenced.
B
[¶22] Ronald Smithberg argues the district court erred in valuing his interest in the corporation at $169,985.
[¶23] Valuation of corporate interests is a question of fact subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a)(6). See Puklich v. Puklich , 2019 ND 154, ¶ 8, 930 N.W.2d 593. We explained:
"A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a), if it is not supported by any evidence, if, although there is some evidence to support the finding, we are left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous conception of the law. See Tornabeni v. Creech , 2018 ND 204, ¶ 22, 916 N.W.2d 772. A district court's finding is not clearly erroneous if it represents a choice between two permissible views of the evidence and the finding is based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations. Schultz [v. Schultz , 2018 ND 259, ¶ 14, 920 N.W.2d 483 ]. A district court's valuations are presumed by this Court to be *219 correct, and a valuation within the range of evidence presented to the court is not clearly erroneous. Id. at ¶¶ 14, 17.
Puklich, at ¶ 8.
[¶24] The district court was presented with differing opinions of value from Ronald Smithberg's witness, Shawn Stumphf, and the defendants' witness, Thomas Ault. The court adopted Ault's valuation. Section 10-06.1-26, N.D.C.C., states that "a fair price for the shares of the withdrawing shareholder must be determined as though the shares were being valued for federal gift tax purposes under the Internal Revenue Code." Ronald Smithberg argues the court erred in adopting Ault's valuation because he did not comply with Internal Revenue Service Ruling 59-60 (Rev. Rul. 59-60, 1959-1 C.B. 237) in valuing his interest and because Ault did not meet the conditions necessary to be a "[q]ualified appraiser" under 26 U.S.C. § 170(f)(11)(E). He also argues Ault's application of a 25 percent discount for lack of marketability and control violates our holding in Fisher v. Fisher , 1997 ND 176, ¶ 23, 568 N.W.2d 728, that a court ascertaining " 'fair value' of minority shares under the Business Corporation Act should not automatically discount their value." See also Puklich , 2019 ND 154, ¶ 17, 930 N.W.2d 593.
[¶25] The district court listed numerous reasons why it chose to adopt Ault's valuation over Stumphf's valuation. First, Stumphf's two valuations used December 31, 2011 rather than June 10, 2016, which the court chose as the appropriate date. Second, Stumphf's valuations failed to account for a significant debt, assuming the corporation rather than James Smithberg purchased his brother's estate shares, and considered the purchase to have occurred on December 31, 2011 rather than the actual date of January 22, 2014. Third, the court noted that although Stumphf may have obtained numerous certifications and was experienced in valuing business entities, Stumphf did not prepare tax returns or gift tax returns. Fourth, and foremost, Stumphf did not value Ronald Smithberg's 24 percent interest for federal gift tax purposes as required by N.D.C.C. § 10-06.1-26. On the other hand, the court found Ault was a certified public accountant since 1991 with experience in preparing federal gift tax returns. Ault prepared his valuation report as though the shares were being valued for federal gift tax purposes and could be amended easily depending on the valuation date chosen. Ault also considered the value of the corporation as of June 10, 2016.
[¶26] Although Ault used a 25 percent minority discount in valuing the interest because in his experience "the IRS accepts a 25 percent discount for a minority ownership," Fisher does not prohibit a discount when ascertaining the fair value of minority shares. 1997 ND 176, ¶ 23, 568 N.W.2d 728. Minority discounts are allowed for purposes of gift tax valuations. See, e.g., Temple v. U.S. , 423 F.Supp.2d 605, 619-20 (E.D. Tex. 2006) ; Pierre v. Comm'r of Internal Revenue , 99 T.C.M. (CCH) 1436 ** 7-8 (T.C. 2010) ; Lappo v. Comm'r of Internal Revenue , 86 T.C.M. (CCH) 333 ** 8-9 (T.C. 2003) ; Annot., Valuation of gift property for purposes of gift tax , 60 A.L.R.2d 1304 § 15 (1958). Furthermore, assuming Ault did not have the credentials listed in 26 U.S.C. § 170(f)(11)(E), he had experience in preparing federal gift tax returns and was the only expert to value Ronald Smithberg's interest for federal gift tax purposes as required under N.D.C.C. § 10-06.1-26. See N.D.R.Ev. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of *220 fact to understand the evidence or to determine a fact in issue.")
[¶27] When a district court could have relied on either of the experts' opinions, the court's choice between the two permissible views of the evidence is not clearly erroneous. See Byron v. Gerring Indus., Inc., 328 N.W.2d 819, 822 (N.D. 1982). The district court's method of valuing Ronald Smithberg's interest in the corporation was not clearly erroneous.
IV
[¶28] Ronald Smithberg requests we remand this case to a different judge, but does not explain why a different judge should be assigned. To the extent he is asserting judicial impropriety based on the judge's misapplication of the law, "we have stated that '[a]n erroneous opinion as to the merits of the case or the law relating to the proceedings is not evidence of bias.' " State v. Craig , 2019 ND 123, ¶ 10, 927 N.W.2d 99 (quoting Datz v. Dosch , 2014 ND 102, ¶ 17, 846 N.W.2d 724 ). Ronald Smithberg has not alleged any facts to indicate bias by the judge. We deny his request.
V
[¶29] We do not address other issues raised because they are either unnecessary to the decision or are without merit. We reverse the summary judgment dismissal of Ronald Smithberg's 13 claims for damages and other relief. We also reverse the district court's valuation of Ronald Smithberg's interest in the corporation due to the need to adjudicate the derivative claims, and remand for further proceedings.
[¶30] Daniel J. Crothers, Acting C.J.
Lisa Fair McEvers
Jerod E. Tufte
Jon J. Jensen
William Neumann, S.J.
[¶31] The Honorable William Neumann, S.J., sitting in place of VandeWalle, C. J., disqualified.