# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

2019 ND 154

---

| | |
|---|---|
| Elyse Puklich, | Petitioner, Appellant, and Cross-Appellee |

v.

| | |
|---|---|
| Blayne Puklich, | Respondent, Appellee, and Cross-Appellant |

and

| | |
|---|---|
| Blayne Puklich, individually and Derivatively as a shareholder of Puklich Chevrolet, Inc., BE Bismarck Limited & B+E Reinsurance Limited, | Plaintiff, Appellee, and Cross-Appellant |

v.

| | |
|---|---|
| Elyse Puklich, | Defendant, Appellant, and Cross-Appellee |

and

| | |
|---|---|
| ELP Performance Limited, a Nevis Corporation and Puklich Ketterling, Inc., a North Dakota Corporation, | Defendants |

---

No. 20180301

---

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Sonna M. Anderson, Judge.

AFFIRMED IN PART AND REVERSED IN PART.

Opinion of the Court by Jensen, Justice.

Michael J. Geiermann, Bismarck, ND, for petitioner, appellant, and cross-appellee Elyse Puklich.

Ryan R. Dreyer (argued), Jeffrey R. Underhill (appeared), and Eric G. Nasstrom (on brief), Minnetonka, MN, for respondent, appellee, and cross-appellant Blayne Puklich.

**Jensen, Justice.**

[¶1]    Elyse Puklich appeals, and Blayne Puklich cross-appeals, from a district court judgment awarding Blayne Puklich $6,012,230. The award includes the value of Blayne's interest in an automobile dealership, the value of Blayne's interest in a real estate partnership, and damages arising from Elyse's breach of fiduciary duties. We reverse in part and affirm in part.

I

[¶2]    Elyse and Blayne Puklich are siblings who held ownership interests in a closely-held corporation, Puklich Chevrolet, Inc. ("PCI"), a limited partnership, B&E Holdings, LLP ("B&E"), and a closely-held corporation, B&E Bismarck Limited ("Limited"). PCI operates an automobile dealership in Bismarck. B&E owns, and leases to PCI, the real estate upon which the dealership is operated. Limited operates a reinsurance business to which PCI allocates a portion of premiums paid by automobile purchasers for extended warranties, credit and disability life insurance, and contractual liability insurance policies.

[¶3]    On November 21, 2013, Elyse initiated this action to dissolve B&E. Blayne responded and asserted his own claims, including a request that the district court compel Elyse to buy his interest in PCI and seeking an award of damages for breach of fiduciary duties.

[¶4]    A trial was held in late November and early December 2017. On June 28, 2018, the district court issued findings of fact, conclusions of law, and ordered the entry of a judgment. The judgment dissolved B&E, compelled Elyse to purchase Blayne's interest in B&E for $2,940,660, and compelled Elyse to purchase Blayne's 19 percent ownership interest in PCI for $2,622,000. The judgment also awards Blayne $300,000 for Elyse's breach of a fiduciary duty owed to Blayne with respect

to B&E. Finally, the judgment provides an award of $149,570 to Blayne for Elyse's breach of her duty of loyalty and fair dealing in winding up Limited. The judgment was entered on July 30, 2018.

[¶5] Elyse appeals the district court's valuation of B&E, the valuation of PCI, and the failure to reduce the value of Blayne's interest in PCI and B&E by the amount of dividends and distributions made to Blayne subsequent to the valuation dates used by the court. Elyse also challenges the determination she breached her fiduciary duty to B&E and the reciprocal award of $300,000 in damages to Blayne, the determination Elyse had breached her fiduciary duty to Blayne as a minority shareholder of PCI, the award of $149,570 related to the winding up of Limited, and several specific findings of fact. Blayne's cross-appeal alleges the court should have determined Elyse breached her fiduciary duties to Blayne, PCI, and Limited by terminating Limited and starting a new reinsurance company, the court erred in valuing damages for Elyse's breach of fiduciary duties to Limited, the court failed to find a breach of fiduciary duties with regard to a real estate transaction in Valley City, and the court abused its discretion in denying Blayne recovery of his attorney fees.

II

[¶6] The district court valued B&E as of November 21, 2013, the date Elyse initiated her petition to dissolve B&E. The court valued PCI as of January 8, 2014, the date of Blayne's first response to Elyse's action. Blayne did not seek a buyout of his interest in PCI until he amended his pleading in June 2016.

[¶7] Elyse challenges the district court's valuation of B&E and PCI. She separately argues that regardless of the accuracy of the court's valuation of B&E and PCI, the court should have reduced the value of Blayne's interest in the two entities by distributions made to Blayne from the entities subsequent to the valuation date. She has not otherwise challenged the valuation dates used by the court.

[¶8] Valuation is a question of fact. *See*, *e.g.*, *Schultz v. Schultz*, 2018 ND 259, ¶ 14, 920 N.W.2d 483 (valuation of property in divorce proceedings is a question of

fact); *Fahey v. Fife*, 2017 ND 200, ¶ 8, 900 N.W.2d 250 (valuation of an estate's property is a finding of fact). A district court's findings on valuation of property will not be reversed unless they are clearly erroneous. *Schultz*, at ¶ 14. A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a), if it is not supported by any evidence, if, although there is some evidence to support the finding, we are left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous conception of the law. *See Tornabeni v. Creech*, 2018 ND 204, ¶ 22, 916 N.W.2d 772. A district court's finding is not clearly erroneous if it represents a choice between two permissible views of the evidence and the finding is based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations. *Schultz*, at ¶ 14. A district court's valuations are presumed by this Court to be correct, and a valuation within the range of evidence presented to the court is not clearly erroneous. *Id.* at ¶¶ 14, 17.

A

[¶9]    Both parties provided the district court with expert opinions on the value of B&E, and the court adopted Blayne's expert's valuation. Elyse argues the court erred in adopting Blayne's expert's valuation of real estate owned by B&E because Blayne's expert valued the real estate as a fee simple estate, rather than a leased fee estate, and ignored the leases that provide PCI with use of the property. Real estate value was then used by a second expert to determine the value of the partnership.

[¶10]  The district court recognized that Blayne's expert had valued the real property as a fee simple estate and that the expert had not considered the leases providing PCI with use of the property. However, the record also includes evidence that the leases were not "arm's-length" leases and the rent payable under the leases could be increased. Blayne's expert considered the rent that could be generated from market value leases and testified that if the leases reflected market value, the leased fee estate and the fee simple estate would be equal. Because there is evidence in the record supporting the court's finding regarding the value of the real estate held by B&E, we are not left with a definite and firm conviction a mistake has been made, the finding

3

was not induced by an erroneous conception of the law, and the court's finding was not clearly erroneous.

[¶11] Elyse also argues the district court erred in rejecting the application of a minority discount and lack of marketability discount to Blayne's partnership interest. "Discounts for a minority interest and for lack of marketability are conceptually distinct." *Estate of Fleming v. Comm'r of Internal Revenue*, 74 T.C.M. (CCH) 1049 *7 (T.C. 1997). A minority discount reflects the minority interest holder's inability to compel liquidation and thereby realize their respective portion of the net asset value. *Id*. A discount for lack of marketability recognizes the lack of a ready market for an ownership interest. *Id*.; *see also* S. Hess, Annot., Use of Marketability Discount in Valuing Closely Held Corporation or Its Stock, 16 A.L.R.6th 693 § 2 (2006). The application and appropriate amount of a minority discount and a lack-of-marketability discount are questions of fact. *Estate of Fleming*, at *7.

[¶12] Elyse sought and was granted dissolution of B&E under N.D.C.C. § 45-20-07, which provides for the liquidation of the partnership assets, payment of the partnership debts, and the distribution of the surplus to the partners pursuant to their respective ownership interests. Because the dissolution of B&E results in the liquidation of its assets, the district court's rejection of the application of a minority discount and discount for lack of marketability, was not clearly erroneous.

B

[¶13] Elyse argues the district court erred in its valuation of PCI by accepting the valuation provided by Blayne as a penalty for Elyse's breach of a fiduciary duty and by rejecting the use of valuation discounts. The court concluded as follows:

> V. Blayne's Count IV, that Elyse breached her duty of good faith and fair dealing in attempting to unfairly oppress Blayne as a minority shareholder in an effort to buy out his shares of PCI at below fair market value is proven. The Court award[s] no specific damages for the breach, but determines that the fair market value of Blayne's 19 percent ownership in PCI is $2,622,000. Elyse shall pay Blayne the sum of $2,622,000 for his 19 percent ownership interest in Puklich Chevrolet, Inc.

In its findings of fact, the district court found as follows:

4

177. The Court finds that Elyse has taken calculated steps in the past few years to force Blayne to sell his interest to her and to reduce any funds owing to Blayne from the business. The Court will not discount Blayne's interest as recommended by Sliwoski.

178. The Court finds that Blayne's 19 percent share of PCI is valued at $2,622,000 and orders that Elyse pay Blayne that sum for his 19 percent share.

[¶14] This Court accords great deference to the credibility determinations of a district court. *Interest of Voisine*, 2018 ND 181, ¶ 5, 915 N.W.2d 647. Both the credibility of witnesses, including experts, and the weight to be given to their testimony, are questions for the trier of fact. *Akerlind v. Buck*, 2003 ND 169, ¶ 15, 671 N.W.2d 256. However, in this instance, the district court's finding on the value of PCI was not limited to making a credibility determination between opposing experts or determining the weight to be given to experts offering opposing views. The court adjusted its finding on the value of PCI to account for Elyse's breach of a fiduciary duty with respect to PCI and, in lieu of awarding damages for the breach, the court adopted the valuation of PCI provided by Blayne's expert.

[¶15] Upon determining that directors, or those in control of a closely-held corporation, have acted fraudulently or illegally to the shareholders, or in a manner unfairly prejudicial to the shareholders, the district court may "dissolve a corporation or grant any equitable relief it deems just and reasonable under certain specified conditions . . . ." *Brandt v. Somerville*, 2005 ND 35, ¶ 9, 692 N.W.2d 144. "The purchase price of any shares of stock that the court orders sold must be the fair value of the shares, unless the shares are subject to a shareholder control agreement, in which case the court shall order the sale for the price set forth in that agreement unless the court determines that price is unreasonable under all the circumstances." *Id*. at ¶ 10 (citing N.D.C.C. § 10-19.1-115(3)(a), subsequently modified and renumbered as N.D.C.C. § 10-19.1-115(4)(a)). We have also recognized that a district court's valuation is not clearly erroneous if it is within the range of evidence provided at trial. *Schultz*, 2018 ND 259, ¶ 17, 920 N.W.2d 483.

5

[¶16] After finding Elyse had breached her fiduciary duty with regard to PCI, the district court could dissolve the corporation or grant the equitable relief that it deemed to be just and reasonable under the circumstances of this particular case. The court selected a value for PCI within the range of evidence, but in a manner that favored Blayne, as an equitable remedy for Elyse's breach of fiduciary duty. The court's valuation was not induced by an erroneous view of the law, was within the range of evidence presented at trial, and we are not left with a definite and firm conviction a mistake has been made. We conclude the valuation of PCI was not clearly erroneous.

[¶17] Elyse also argues the district court erred in its valuation of PCI by rejecting the use of valuation discounts. This Court has previously noted the following regarding a district court's decision not to apply discounts for lack of control of a closely-held business when the business itself, or those with a controlling interest, have sought to purchase the minority interest:

> "[A]lmost all of the courts that have considered the question" have refused to apply a discount in valuing stock to protect a minority shareholder. Christopher Vaeth, Annotation, Propriety of Applying Minority Discount to Value of Shares Purchased by Corporation or its Shareholders from Minority Shareholders, 13 A.L.R.5th 840, 850 (1993). They realize the diminished value of a minority interest alone, but conclude that fact is irrelevant when the purchaser is the corporation or shareholders who control it. *Charland v. Country View Golf Club, Inc.*, 588 A.2d 609, 611-12 (R.I. 1991). Those courts recognize the purpose of the corporate dissolution remedy intends "[n]o discount should be applied simply because the interest to be valued represents a minority interest in the corporation." *Blake v. Blake Agency, Inc.*, 107 A.D.2d 139, 486 N.Y.S.2d 341, 349 (1985). *Brown v. Allied Corrugated Box Co., Inc.*, 91 Cal.App.3d 477, 154 Cal.Rptr. 170, 176 (1979), explained that "the statutes suggest that a minority shareholder who brings an action for the involuntary dissolution of a corporation should not, by virtue of the controlling shareholder's invocation of the buy-out remedy, receive less than he would have received had the dissolution been allowed to proceed."

> For shareholders dissenting from changes in a closely-held corporation, the courts fixing "fair value" have often refused to apply a minority discount. *See MT Properties, Inc. v. CMC Real Estate Corp.*, 481 N.W.2d 383, 388 (Minn.App. 1992) ("because the

6

legislature has enacted the statute with the evident aim to protect the dissenting shareholder, we must prohibit application of minority discounts when determining 'fair value' in statutory dissenter's rights cases"); *In re Valuation of Common Stock of McLoon Oil Co.*, 565 A.2d 997, 1003 (Me. 1989); *Columbia Management Co. v. Wyss*, 94 Or.App. 195, 765 P.2d 207, 213-14 (1988). As the Delaware Supreme Court explained in *Cavalier Oil Corp. v. Harnett*, 564 A.2d 1137, 1145 (Del. 1989):

> Discounting individual share holdings injects into the appraisal process speculation on the various factors which may dictate the marketability of minority shareholdings. More important, to fail to accord to a minority shareholder the full proportionate value of his shares imposes a penalty for lack of control, and unfairly enriches the majority shareholders who may reap a windfall from the appraisal process by cashing out a dissenting shareholder, a clearly undesirable result.

We agree a trial court ascertaining "fair value" of minority shares under the Business Corporation Act should not automatically discount their value.

*Fisher v. Fisher*, 1997 ND 176, ¶¶ 22-23, 568 N.W.2d 728. The district court's rejection of discounts when valuing PCI was consistent with our case law.

C

[¶18] Elyse appeals the district court's decision not to reduce the amount she is required to pay Blayne for his ownership interests in PCI and B&E for dividend payments and distributions that were made subsequent to the valuation dates for the two businesses. The court acknowledged Elyse's argument, reserved consideration of the post-litigation dividends and distributions until its final judgment, and concluded that because Blayne continued to be an owner of the businesses through trial, he was entitled to keep the distributions he received between the date of valuation and completion of the court-ordered purchases of Blayne's interests.

[¶19] B&E was a partnership, Elyse sought dissolution of the partnership, and Blayne responded with a request to expel Elyse from the partnership. The district court granted the dissolution requested by Elyse, ordered her to compensate Blayne

7

for his ownership interest, and denied Blayne's request to expel Elyse from the partnership.

[¶20]   We have recognized that valuation of a partnership ownership interest should be determined as of the date of dissolution. *Red River Wings, Inc. v. Hoot, Inc.*, 2008 ND 117, ¶ 44, 751 N.W.2d 206.  Elyse argues because the date of valuation was set by the district court as November 21, 2013, the date the petition seeking dissolution was initiated, dissolution of the partnership occurred on that date.  Her argument fails for two reasons.  First, when dissolution is sought by a partner through an application for dissolution with the district court, the dissolution occurs upon a judicial determination that sufficient circumstances exist to support the requested dissolution.  N.D.C.C. § 45-20-01(5).  In this case, the judicial determination did not occur until the entry of the judgment in July 2018.  Second, a partnership continues after dissolution for the purpose of winding up its business, and termination of the partnership does not occur until the winding up of its business is completed.  N.D.C.C. § 45-20-02(1).  Additionally, a person winding up a partnership's business may preserve the partnership business or property as a going concern for a reasonable time.  N.D.C.C. § 45-20-03(3).  We conclude the dissolution did not occur until there had been a judicial determination in July 2018.

[¶21]   While we do not agree with Elyse's contention that the dissolution occurred on November 21, 2013, her contention necessarily calls into question the district court's selection of November 21, 2013 as the valuation date when our prior case law provides that the valuation should occur on the date of dissolution. *Red River Wings*, 2008 ND 117, ¶ 44, 751 N.W.2d 206.  Here, both parties urged the district court to adopt November 21, 2013 as the valuation date, although we recognize Elyse's request was coupled with her contention that November 21, 2013 should be determined to be the date of dissolution.  On appeal, neither party challenges the valuation date used by the court.

[¶22]   We also note that although the district court's use of a valuation date requested by the parties was different from the dissolution date and was contrary to our case

8

law, the result for Elyse with regard to the post-petition distributions is the same as it would have been had the court applied the law. If the law had been applied, distributions would have been required to have been made until the judicial determination granting the dissolution in July 2018 and the ensuing winding up of the partnership. An application of the law would have delayed the valuation date of Blayne's interest until July 2018, but would not have eliminated the distributions between the filing of the petition on November 21, 2013 and the winding up of the partnership. We conclude the court's valuation of Blayne's ownership interest was not clearly erroneous as a result of the court's decision not to reduce the valuation of B&E by the amount of the post-petition distributions.

[¶23] Elyse also challenged the district court's refusal to reduce the purchase price of Blayne's interest in PCI by the amount of dividends paid to Blayne during the pending litigation. Elyse's challenge to the PCI distributions, like the B&E distributions discussed in paragraphs 18-22, is essentially a challenge to the valuation date used by the court and an assertion that the valuation date should be considered the date Blayne's interest terminated. On appeal, neither party has challenged the valuation date used by the court. Additionally, N.D.C.C. § 10-19.1-115(4)(a) provides that the court should determine "the fair value of the shares as of the date of the commencement of the action or as of another date found equitable by the court." (Emphasis added). As we determined in the prior paragraphs with regard to the post-litigation distribution from B&E, Blayne continued to hold his interest in PCI after the start of the litigation. We conclude the court's valuation of Blayne's ownership interest was not clearly erroneous as a result of the court's decision not to reduce the valuation of PCI by the amount of the dividends paid during the litigation because Blayne continued to own his interest in PCI.

[¶24] In its findings of fact, the district court provided for a continuation of distributions to Blayne until the purchase of his interest in B&E was complete and during any period of appeal. Blayne continued to receive distributions post-trial. "When supervising dissolution of a partnership, the district court acts as a court of

9

equity, giving it the discretion to determine what is fair and equitable under the circumstances." *In re PB&R*, 380 P.3d 234, 237 (Kan. Ct. App. 2016); *see also Tarnavsky v. Tarnavsky*, 147 F.3d 674, 679 (8th Cir. 1998) (applying North Dakota law). "A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if it misinterprets or misapplies the law, or its decision is not the product of a rational mental process leading to a reasoned decision." *Estate of Brandt*, 2019 ND 87, ¶ 35, 924 N.W.2d 762.

[¶25] The judgment granted Elyse's request for dissolution of the partnership, compelled the purchase of Blayne's interest, and set a specific price for the purchase. However, the dissolution did not terminate the partnership and the partnership continued until it had completed winding up its affairs. N.D.C.C. § 45-20-02. Winding up the partnership requires the settlement of all partnership accounts. N.D.C.C. § 45-20-07. Although the district court determined the value of Blayne's partnership interest, by granting the dissolution requested by Elyse, the partnership continued until the winding up was complete, including payment to Blayne for his interest in the partnership. It was not an abuse of discretion to require continued payments until the winding up of the partnership was complete and Blayne's interest had been paid.

[¶26] The district court also ordered Elyse to continue to pay dividends to Blayne from PCI until his interest had been purchased by Elyse. A court has a wide range of discretion under N.D.C.C. ch. 10-19.1 to fashion equitable remedies for a breach of fiduciary duty, and we review the court's determination about remedies under the abuse of discretion standard. *See Danuser v. IDA Mktg. Corp.*, 2013 ND 196, ¶ 34, 838 N.W.2d 488. PCI continued as a going concern and dividends are payable to the shareholders. Blayne continues to be a shareholder until Elyse has tendered payment for his shares or satisfied the conditions provided in N.D.C.C. § 10-19.1-115(4)(d), and the continuation of dividends until the purchase is complete was not an abuse of discretion.

10

[¶27] Elyse's argument that post-judgment distributions were inappropriate requires consideration of whether Blayne is receiving a double recovery from post-judgment distributions and post-judgment interest. Recovery of both post-judgment interest and post-judgment distributions would be an inappropriate double recovery. *Ivy v. Calais Co., Inc.*, 397 P.3d 267, 278-79 (Alaska 2017) (holding that the purpose of interest is to make a person whole and limiting recovery to "the difference between the post-judgment interest and the dividends she has actually received"). *See also Cox Enters., Inc. v. News-Journal Corp.*, 510 F.3d 1350, 1361 (11th Cir. 2007) (denial of interest during two-and-a-half-year period from date of valuation to final judgment was proper where plaintiff received $2.8 million in dividends during that period). A double recovery of post-judgment interest and distributions is not present in this case. The judgment does not expressly provide for the payment of interest. The judgment unambiguously makes the purchase of Blayne's B&E interest prospective and is not a money judgment upon which interest would normally accrue. While the judgment with regard to PCI is not as clear with respect to whether it is a money judgment, Elyse did not expressly raise the issue on appeal, Blayne does not seek interest in addition to the distributions, and the district court's findings clearly provide for post-judgment distributions in lieu of interest.

D

[¶28] Elyse appeals the determination that she breached her fiduciary duty to B&E. Whether there has been a breach of a fiduciary duty is a finding of fact subject to the clearly erroneous rule under N.D.R.Civ.P. 52(a). *Akerlind*, 2003 ND 169, ¶¶ 26-27, 671 N.W.2d 256.

[¶29] The district court determined Elyse had access to and control of the records for B&E. The court also determined Elyse had a duty to provide Blayne with access to those records and had a duty to respond to reasonable requests for partnership information under N.D.C.C. § 45-16-03. The court also determined Blayne was entitled to a share of the profit under N.D.C.C. § 45-16-01(2), and Elyse breached her fiduciary duty to provide Blayne with timely distributions. After a review of the

11

record, we are satisfied there is evidence to support the court's finding that Elyse breached her fiduciary duties to Blayne with respect to B&E, we are not left with a definite and firm conviction a mistake has been made, and we conclude the finding was not clearly erroneous.

E

[¶30] Elyse contends the damage award to Blayne in the amount of $300,000 for Elyse's breach of fiduciary duties to Blayne as a partner in B&E is clearly erroneous because there is no evidence in the record to support the award. The district court's only finding on the issue of damages with regard to the breach of fiduciary duties relating to B&E reads as follows: "The Court awards Blayne the sum of $300,000 to cover the increased cost he had to incur to force Elyse to honor her obligation [of good faith, fair dealings and to act diligently]." The court provided no further explanation.

[¶31] Blayne contends the district court received evidence to support the damage award pursuant to a summary of damages received into evidence during the direct examination of one of Blayne's experts. The summary provides the expert's opinion regarding the fair market value and an alternative fair value of various damage claims. In general, the summary provides a subtotal for each business and then a "Total Before Attorney Fees" totaling the fair market value of the damage claims and the fair value of the damage claims. The expert was questioned about each of the entries above the "Total Before Attorney Fees."

[¶32] Following the summary's "Total Before Attorney Fees," there is a section labeled attorney fees with the amount of $577,486.92. This is the "evidence" Blayne contends supports the district court's award of $300,000 for Elyse's breach of her fiduciary duty with respect to B&E. However, during the examination of Blayne's expert and the review of the summary by the expert, upon reaching the section titled "Total Before Attorney Fees," the following exchange occurred between Blayne's attorney and the expert regarding the remaining entries:

> Q. And we didn't talk about attorney's fees so we just ignore the rest of that stuff; right?

12

A.  Correct.

From the transcript of the examination, it is clear the expert did not provide confirmation of the attorney fees incurred by Blayne and was not asked to provide testimony regarding the expenses incurred by Blayne.  Blayne offered no other references to the record to support the $300,000 damage award.  The district court also denied Blayne's specific request for attorney fees and, even if the uncorroborated line item for attorney fees provided on the damage summary could be relied on, there is no indication what portion, if any, is related to Elyse's breach of her fiduciary duties with respect to B&E.

[¶33]  The district court offered no explanation of how the $300,000 damage award was determined.  Blayne had the burden to prove damages proximately caused by the breach of fiduciary duties.  *See Nesvig v. Nesvig*, 2004 ND 37, ¶ 13, 676 N.W.2d 73.  Upon reviewing the record, we are not satisfied sufficient evidence was presented to support the court's damage award to Blayne for Elyse's breach of a fiduciary duty with respect to B&E, we are left with a definite and firm conviction a mistake has been made, and we conclude the $300,000 damage award is clearly erroneous.  We reverse the award of $300,000.

F

[¶34]  Elyse challenges the district court's finding that she breached fiduciary duties owed to Blayne with regard to the operation of PCI.  Elyse contends Delaware law applies because PCI was incorporated in Delaware, and Delaware law does not recognize a cause of action for minority suppression.  This Court has not previously been requested to consider the "internal affairs doctrine" which holds the laws of the state of incorporation control the internal affairs of a corporation to insure only one state has the authority to regulate internal corporate affairs rather than imposing conflicting demands on a corporation.  *See, e.g.*, *Villari v. Mozilo*, 146 Cal. Rptr. 3d 556, 561 n.8 (Cal. Ct. App. 2012).  Other courts using a significant contacts analysis to resolve a conflict of laws, refuse to apply Delaware law where incorporation of the

13

business is the only contact the business has with Delaware. *See, e.g., Finch v. Southside Lincoln-Mercury, Inc.*, 685 N.W.2d 154, 166 (Wis. Ct. App. 2004).

[¶35]   It is not necessary to decide if the laws of this State or the laws of the state of incorporation control the internal affairs of PCI.   Both Delaware law and North Dakota law require "those in control of a corporation to act in good faith, and affords remedies to minority shareholders if those in control act fraudulently, illegally, or in a manner unfairly prejudicial toward any shareholder." *Lonesome Dove Petroleum, Inc. v. Nelson*, 2000 ND 104, ¶ 30, 611 N.W.2d 154; *see also Brandt*, 2005 ND 35, ¶ 7, 692 N.W.2d 144; *Condec Corp. v. Lunkenheimer Co.*, 230 A.2d 769, 775 (Del. Ch. Ct. 1967);  *Litle v. Waters*, Civ. A. No. 12155, 1992 WL 25758 *8 (Del. Ch. Feb. 11, 1992).  Regardless of whether Delaware or North Dakota law were to be applied, Blayne's cause of action asserting Elyse breached her fiduciary duties with regard to PCI would be recognized.

[¶36]   Whether there has been a breach of a fiduciary duty is a finding of fact subject to the clearly erroneous rule under N.D.R.Civ.P. 52(a). *Akerlind*, 2003 ND 169, ¶¶ 26-27, 671 N.W.2d 256.  The district court found "that Elyse breached her duty of good faith and fair dealing in attempting to unfairly oppress Blayne as a minority shareholder in an effort to buy out his shares of PCI at below fair market value is proven." The court's findings included determinations Elyse took calculated steps to force Blayne to sell his interest to her by reducing the flow of funds to Blayne from the business and delaying in providing Blayne information about the business.  There is sufficient evidence in the record to support the findings, we are not left with a definite and firm conviction a mistake has been made, and we conclude the findings that Elyse breached her fiduciary duties to Blayne with respect to PCI is not clearly erroneous.

G

[¶37]   Elyse challenges the district court's findings of fact supporting the court's determinations discussed previously in this opinion.

14

[¶38]   The first subject matter of the challenged findings of the district court relates to the valuations provided by Blayne's expert witnesses and have been addressed earlier in this opinion in our discussion of the valuations.  To the extent her challenges are to the court's preference of Blayne's valuation expert over her valuation expert, we note that a court's reliance on one party's expert witness over the other party's expert witness is not clearly erroneous.  *See Byron v. Gerring Indus., Inc.*, 328 N.W.2d 819, 822 (N.D. 1982).  The findings are supported by evidence within the record, we are not left with a definite and firm conviction a mistake has been made, and the findings were not induced by an erroneous conception of the law. The findings related to valuation are not clearly erroneous.

[¶39]   Elyse also challenges the findings that she had breached various fiduciary duties.   As noted earlier in our opinion, whether shareholder or partner action constitutes a breach of fiduciary duties is a question of fact subject to the clearly erroneous rule.  *See Kortum v. Johnson*, 2008 ND 154, ¶ 24, 755 N.W.2d 432; *Red River Wings*, 2008 ND 117, ¶ 31, 751 N.W.2d 206.  The record reflects Elyse engaged in numerous business transactions for her own financial gain and to Blayne's detriment.  The findings are supported by evidence within the record, we are not left with a definite and firm conviction a mistake has been made, and the findings were not induced by an erroneous conception of the law.  The findings related to Elyse's breach of fiduciary duties are not clearly erroneous.

[¶40]   Elyse challenges the findings supporting the amount of damages awarded for the breaches.  A damage award will be sustained on appeal if it is within the range of evidence presented to the trier of fact.  *See Stuber v. Engel*, 2017 ND 198, ¶ 30, 900 N.W.2d 230.  With the exception of the $300,000 award for Elyse's breach of fiduciary duties with respect to B&E, the damage awards are within the range of the evidence presented to the district court, we are not left with a definite and firm conviction a mistake has been made, and the findings were not induced by an erroneous conception of the law.  The findings related to damages, with the exception

of the $300,000 award for breach of fiduciary duties related to B&E, are not clearly erroneous.

## III

[¶41]   Blayne, in his cross-appeal, contends Elyse breached her fiduciary duties to Blayne and Limited when she terminated the reinsurance business and formed a new reinsurance business, and Elyse's formation of the new reinsurance business breached her fiduciary duties to Blayne and PCI.  Blayne also contends the district court abused its discretion in determining the amount of damages resulting from Elyse's breach of her fiduciary duty to Blayne and B&E, Elyse breached her fiduciary duties to B&E in the purchase of the Valley City real estate, and the court abused its discretion in denying Blayne recovery of his attorney fees.

### A

[¶42]   Blayne's first two issues in his cross-appeal relate to Elyse's formation of a new reinsurance business to replace Limited.  Blayne contends Elyse's formation of the new reinsurance business and the manner in which she replaced Limited breached her fiduciary duties to Blayne and Limited, because she had a fiduciary duty to protect Limited as a going concern.  Blayne also contends Elyse breached her fiduciary duties to Blayne and PCI by ceding PCI's Finance and Insurance ("F&I") premiums to the new reinsurance business.

[¶43]   The district court addressed Blayne's allegations that Elyse's termination of Limited and formation of a new reinsurance company breached her various fiduciary duties to Blayne, PCI, and Limited.  With regard to Blayne and PCI, the court found "Elyse hid her plan for the F&I reinsurance business from Blayne and his representatives . . ." and "Elyse intentionally misrepresented and misled Blayne and his agents . . . ."  With regard to Blayne and Limited, the court awarded Blayne "damages for misconduct and breach of duty . . . ."  In its conclusions, the district court noted the following:

> Blayne's Count III, that Elyse's actions in winding up the business of
> B&E Bismarck Limited, the reinsurance company, breached her duty

of loyalty and fair dealing, is proven. Elyse did breach her duty in winding up the business of B&E Bismarck Limited. The Court finds no support for Elyse's claim that as a 50 percent owner of the business, she had the full right and authority to shut down the business on her terms without notifying Blayne, the co-owner.

[¶44] Blayne's argument is essentially that, although the district court found Elyse had breached her fiduciary duties, it improperly excluded some of Elyse's actions from the finding there had been a breach. Blayne provides the following quote to support his assertion the court misapplied the law: "as Dealer and Owner of PCI . . . had the right to cede future business to ELP," the new reinsurance entity. Blayne also quotes the court's finding: "Elyse had the authority to transfer the PCI business to ELP." Blayne argues the determination that Elyse had the right to cede future business to ELP incorrectly states the law and ultimately results in the court failing to award damages for Elyse's breaches of fiduciary duties associated with winding up Limited and starting a new reinsurance business.

[¶45] Appellate courts review the record and findings as a whole and if the controlling findings are supported by the evidence, they will be upheld on appeal notwithstanding immaterial misstatements in the lower court's decision. *See Hawkins v. Williams*, 314 P.3d 1202, 1206 (Alaska 2013); *Cathedral Green, Inc. v. Hughes*, 166 A.3d 873, 880 (Conn. Ct. App. 2017); *In re P.S.*, 127 P.3d 451, 457 (Mont. 2006); *cf. Ludwig v. Burchill*, 514 N.W.2d 674, 677 (N.D. 1994) (nonsubstantive misstatements in a district court decision do not render the court's findings clearly erroneous). After reviewing the record and the district court's findings and conclusions in their entirety, we are not persuaded the court misapplied the law. The court, in its conclusions, expressly rejected Elyse's assertion "she had the full right and authority to shut down the [reinsurance] business on her terms . . . ." The court also expressly found Elyse's actions associated with winding up Limited's business was a breach of fiduciary duty. When the court's findings are reviewed as a whole, we conclude the district court did not misapply the law.

B

17

[¶46]   Blayne contends the district court abused its discretion in its determination of the damages with respect to Elyse's breach of fiduciary duties to Blayne and Limited. Blayne quotes the court's finding that "the term of 10 years [used in calculating future damages] is too long, as Elyse had the authority to transfer the PCI business to ELP." Again, the court, in its conclusions, expressly rejected Elyse's assertion "she had the full right and authority to shut down the [reinsurance] business on her terms . . . ." Based on the record as a whole, we conclude the court properly considered the question of damages for Elyse's breach of fiduciary duties to Blayne and Limited.

C

[¶47]   Blayne asserts the district court erred by not addressing his claim that Elyse breached her fiduciary duties to B&E in the purchase of the Valley City real estate. Blayne's complaint did not mention the Valley City real estate opportunity and, at trial, Elyse objected to the admission of evidence on the issue. Under N.D.R.Civ.P. 15(b), pleadings may be amended at any time to include issues not raised in the pleadings when they are tried by the express or implied consent of the parties. But the rule does not apply when the opposing party objects to the introduction of evidence relating to the unpled claim. *See Fleck v. Jacques Seed Co.*, 445 N.W.2d 649, 652 (N.D. 1989). We conclude the court did not err in refusing to address this unpled claim.

D

[¶48]   Blayne contends the district court abused its discretion by failing to award him his attorney fees. We will not reverse a determination on attorney fees absent an abuse of discretion. *Estate of Brandt*, 2019 ND 87, ¶¶ 41-44, 924 N.W.2d 762. Here, both parties prevailed on a number of the claims. As noted above, no evidence of Blayne's attorney fees was presented to the court and he did not move to amend the judgment under N.D.R.Civ.P. 54. Under these circumstances, the court did not abuse its discretion in denying Blayne's request to recover his attorney fees.

IV

18

[¶49] We do not address other arguments raised because they are either unnecessary to the decision or are without merit. The district court's award of damages to Blayne for Elyse's breach of fiduciary duty with regard to B&E was clearly erroneous, and we reverse that portion of the judgment. We affirm the remainder of the judgment.

[¶50] Jon J. Jensen
Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte
Gerald W. VandeWalle, C.J.