FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
MARCH 17, 2022
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 51

Susan Sproule, Sandra Crary, and
Lynnell Stegman,                                                  Plaintiffs and Appellees

v.

Brian Johnson, Rodger Johnson, Lyle Johnson,
New Partnership, and Nor-Agra, Inc.,                  Defendants and Appellants

and

Al Johnson,                                                                           Defendant

## No. 20210235

Appeal from the District Court of Grand Forks County, Northeast Central
Judicial District, the Honorable Donald Hager, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Douglas A. Christensen (argued) and Joseph E. Quinn (on brief), Grand Forks,
ND, for plaintiffs and appellees.

Todd E. Zimmerman (argued) and Abigale R. Griffin (on brief), Fargo, ND, and
Joseph A. Turman (appeared) Fargo, ND, for defendants and appellants Brian
Johnson, Rodger Johnson, Lyle Johnson, New Partnership, and Nor-Agra, Inc.

**Crothers, Justice.**

[¶1]   Brian Johnson, Rodger Johnson, Lyle Johnson, New Partnership and Nor-Agra, Inc. (Defendants) appeal from an amended judgment dissolving the Johnson Farms partnership. The Defendants argue the district court erred in its valuation and distribution of the partnership's assets. We affirm.

I

[¶2]   Brothers Bert and Lyle Johnson formed the Johnson Farms partnership in 1974. Bert Johnson's children, Susan Sproule, Sandra Crary, Lynnell Stegman and Al Johnson, later became partners. Lyle Johnson's children, Brian Johnson and Rodger Johnson, also became partners.

[¶3]   Bert Johnson died in July 2014. In September 2014, Susan Sproule, Sandra Crary, Lynnell Stegman and Al Johnson gave the Defendants a written dissociation notice demanding withdrawal from the partnership and requesting distribution of assets. The Defendants did not respond to the dissociation notice, and Susan Sproule, Sandra Crary and Lynnell Stegman (Plaintiffs) sued for dissolution of the Johnson Farms partnership in October 2016.

[¶4]   In April 2017, the parties' attorneys executed and filed a joint statement of counsel stating the parties agreed to the dissolution of Johnson Farms. The statement indicated the parties reached agreements relating to the appraisal and distribution of Johnson Farms' numerous assets, including crops, farm equipment and farmland. Following the joint statement of counsel, the Plaintiffs' attorney drafted an "Agreement in Principal for the Dissolution of Johnson Farms," which included more details on the appraisal and distribution of Johnson Farms' assets. The agreement included a provision on the distribution of Johnson Farms' indirect ownership interest in Shilo Farms, a Canadian entity. The agreement was unsigned; however, at a November 2017 status conference, the Defendants' attorney stated, "We had an Agreement in Principal, and we are sticking to it." The Defendants' attorney also asked the

district court to "give the agreement an opportunity to work the way it was intended."

[¶5] In reliance on the agreement in principal, the parties appraised the partnership's assets, including farmland and Shilo. In December 2017, the district court ordered the division of the farmland between the parties, with the Plaintiffs receiving "Farm Groups Three and Four," and the Defendants receiving "Farm Groups One and Two." In May 2018, the court ordered the division of the partnership's machinery and equipment.

[¶6] Despite the joint statement of counsel and agreement in principal, disagreements remained over the valuation of the partnership's assets and the disposition of Shilo Farms. At the July 2020 trial, the parties discussed the disposition of Shilo and presented evidence on its value. The Defendants relied on a 2017 appraisal of Shilo showing a value of $40,660,802 (CAD). The Defendants also submitted a letter from Shilo's accounting firm discussing the tax consequences if Shilo's assets were liquidated. The Plaintiffs submitted a 2019 appraisal of Shilo showing a value of $59,072,389 (CAD).

[¶7] After trial, the district court entered a judgment dissolving the partnership and distributing the assets among the parties. The court found the 2017 balance sheet showed assets of $10,337,837. The court found each Plaintiff was due $1,292,230, each was already paid $802,741, and the balance due to each was $489,489. The court found the 2017 crop expenses paid in 2018 was $693,584 and each Plaintiff's share was $86,698. The court found that under the April 1, 2017 appraisals of farmland, the Lyle Johnson family defendants received farmland valued at $56,648,543.55. The Bert Johnson family plaintiffs received farmland valued at $56,387,904.40. The court awarded each Plaintiff $32,580 to make up the difference.

[¶8] The district court found the 2019 appraisal of Shilo was more accurate than the 2017 appraisal because the Plaintiffs continued to contribute capital and pay tax on undistributed income resulting in the growth and increased productivity of Shilo from 2017 to 2019. The court found Shilo's total value was $59,072,389 (CAD), or $47,257,911 (US). As part of the partnership's

dissolution the court ordered Lyle, Rodger and Brian Johnson to pay each Plaintiff $5,316,515 (US) for their indirect interest in Shilo. The court did not deduct taxes from the amount awarded to the Plaintiffs for their interests in Shilo.

## II

[¶9] We have explained our standard of review in an appeal from a bench trial:

> "In an appeal from a bench trial, the district court's findings of fact are reviewed under the clearly erroneous standard of review, and its conclusions of law are fully reviewable. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is convinced a mistake has been made. In a bench trial, the district court is the determiner of credibility issues and we will not second-guess the district court on its credibility determinations. Findings of the trial court are presumptively correct."

*Gimbel v. Magrum*, 2020 ND 181, ¶ 5, 947 N.W.2d 891 (cleaned up).

## III

[¶10] The Defendants argue the district court erred by dissolving Johnson Farms. They claim the court should have dissociated the Plaintiffs from the partnership without winding up the partnership's business.

[¶11] Dissolution and winding up of partnership business is governed by N.D.C.C. ch. 45-20. Chapter 45-19, N.D.C.C., governs the dissociation of a partner when a partnership's business is not wound up.

[¶12] In its April 2021 findings of fact, conclusions of law and order for judgment, the district court explained why this action was for the dissolution of Johnson Farms:

> "Defendants argue post-trial this matter should be resolved as a partnership dissociation, pursuant to NDCC Chapter 45-19.

3

The court finds that this action is a dissolution, and not a dissociation, as evidenced by the actions, inactions, and agreements of the parties. The Complaint requests relief for dissolution, the Agreement in Principal and the Joint Statement of Counsel all identify this matter as one for dissolution. The court made such a ruling in its Order Granting Plaintiffs' Motion for an Order Directing Division of Farm Real Property, Document No. 34, filed December 1, 2017, in which the court at ¶ 5, stated, '[t]he Court finds dissolution has been commenced for Johnson farms, a general partnership, pursuant to N.D.C.C., Section 45-20-01.' The Defendants did not appeal that order, nor seek any injunctive relief or writ to prohibit the dissolution process.

. . . .

"The parties, by and through their attorneys, agreed to dissolve the existing Johnson Farms partnership, and prepared to do so by forming the 'New Partnership.' Thus, the partnership agreement cannot violate the statutory rights of partners to dissolve an existing arrangement, despite a constricted reading of the agreement's terms. NDCC § 45-18-02(1); NDCC § 45-13-03(2)(f).

"Had this matter been a disassociation and not a dissolution, Defendants Lyle, Rodger and Brian for Johnson Farms failed to comply with statutory requirements, and within 120 days after a written demand for payment, to pay cash to the dissociated Plaintiff partners, in [an] amount estimated to be the buyout price and accrued interest, pursuant to NDCC, Section 45-19-01(5). . . . There were no actions taken by the Defendants to follow the requirements of dissociation—no liquidation or going concern appraisals, or any money paid, or statutory statement given to the Plaintiffs."

[¶13] The Johnson Farms partnership agreement states the "partnership may be terminated by operation of law." The Plaintiffs and Al Johnson began the process in September 2014 when they provided written notice of their dissociation within 90 days of Bert Johnson's death. *See* N.D.C.C. § 45-20-01(2)(a) (providing for dissolution of a partnership when at least half of the remaining partners express their will to wind up the partnership business within 90 days of a partner's dissociation by death). After the Plaintiffs sued

for dissolution, the joint statement of counsel provided "[t]he Parties have agreed that Johnson Farms, a North Dakota general partnership, should be dissolved, its activities wound-up, it debts and obligations discharged and remaining assets should be distributed to the members of the Bert Johnson Family and the Lyle Johnson Family."

[¶14] The Defendants sought dissociation under N.D.C.C. ch. 45-19 after trial and more than six years after the initial notice for dissolution. Despite their eleventh-hour request for dissociation, the Defendants failed to comply with the statutory requirements of N.D.C.C. ch. 45-19 to purchase the Plaintiffs' partnership interests. The district court relied on the parties' statements and representations during this action and did not clearly err by finding this action was for the dissolution of the Johnson Farms partnership.

[¶15] The Defendants also contend the district court erred by combining the remedies of dissolution and dissociation in this action. The Defendants argue the court employed a dissociation remedy by ordering a buyout of the Plaintiffs' indirect interests in Shilo. *See* N.D.C.C. § 45-19-01(2) (providing for a buyout of a dissociated partner's interest when partnership business is not wound up).

[¶16] Johnson Farms owned an indirect interest in Shilo. Johnson Farms owned J.F. Johnson Farm Co. Ltd., a Canadian entity. J.F. Johnson Farm owns fifty percent of Shilo's stock. Nor-Agra, Inc., a North Dakota corporation, also owns fifty percent of Shilo's stock. The Plaintiffs and Rodger Johnson, Brian Johnson and Al Johnson are Nor-Agra shareholders. Thus, the parties indirectly own Shilo through Nor-Agra and J.F. Johnson Farm.

[¶17] Although the district court ordered a buyout of the Plaintiffs' indirect interests in Shilo, the agreement in principal provided that either the Plaintiffs or Defendants should own all of Shilo's stock. The trial testimony established the Plaintiffs and Defendants did not get along and did not want to continue their business relationship. The court could have distributed the J.F. Johnson Farm stock among the parties to complete the dissolution of Johnson Farms. *See* N.D.C.C. § 45-20-03(3) (providing for the distribution of a partnership's assets during the winding up of a partnership's business). However, the parties

would have remained shareholders of J.F. Johnson Farm and indirect owners of Shilo, which they expressly did not want. Additionally, the parties' attorneys stated at trial they were not in favor of a stock distribution because of the potential tax consequences in Canada.

[¶18] When supervising a partnership's dissolution, "the district court acts as a court of equity, giving it the discretion to determine what is fair and equitable under the circumstances." *Puklich v. Puklich*, 2019 ND 154, ¶ 24, 930 N.W.2d 593. Here, the Defendants have failed to show the court abused its discretion by doing what was fair and equitable under the circumstances. The buyout of the Plaintiffs' indirect interests in Shilo satisfied the parties' request to sever their business relationship. The court did not err by ordering a buyout of the Plaintiffs' indirect interests in Shilo to complete the dissolution of Johnson Farms.

## IV

[¶19] The defendants argue the district court erred in its valuation of Shilo. They assert the court was required to consider taxes in calculating the Plaintiffs' buyout of their Shilo interests. The Defendants also claim the court erred in valuing Shilo on the basis of the 2019 appraisal instead of the 2017 appraisal.

[¶20] "Valuation is a question of fact." *Puklich*, 2019 ND 154, ¶ 8. We presume a district court's valuations are correct, and a valuation within the range of evidence presented at trial is not clearly erroneous. *Id.*

## A

[¶21] The Defendants assert the district court was required to consider taxes in valuing the Plaintiffs' indirect interests in Shilo.

[¶22] The district court did not consider taxes in its valuation of Shilo and did not deduct taxes from Shilo's gross value when calculating the Plaintiffs' indirect interests in Shilo. The court found the agreement in principal "called for valuation without a discount." The court addressed the Defendants' letter

6

from Shilo's accounting firm discussing the tax implications if Shilo's assets were liquidated. The court found the Defendants' position on taxes was speculative because Rodger Johnson testified there were no immediate plans to liquidate Shilo's assets.

[¶23] The Defendants cite to cases holding taxes should be considered when valuing a corporation. *See, e.g., Daniels v. Holtz*, 794 N.W.2d 813, 819 (Iowa 2010) (concluding an appraisal of a corporation could factor in capital gains tax liability when the corporation was to be sold at a sheriff's sale); *Estate of Jelke v. Comm'r*, 507 F.3d 1317, 1319 (11th Cir. 2007) (holding that for purposes of estate tax determination, decedent's minority interest in a closely held corporation should be discounted for potential capital gains tax liability under the arbitrary assumption that the corporation is liquidated on the date of death and all assets sold); *Eisenberg v. Comm'r*, 155 F.3d 50, 59 (2nd Cir. 1998) (concluding value of corporate stock could be reduced, for gift tax purposes, by a corporation's potential capital gains tax liabilities).

[¶24] The cases cited by the Defendants do not establish the district court's decision to exclude taxes was induced by an erroneous view of the law. This case does not involve a sale of corporate assets or the valuation of corporate stock for estate or gift tax purposes. The court found the Defendants' evidence relating to taxes was speculative because there were no immediate plans to liquidate Shilo's assets. After reviewing the record, we are not left with a definite and firm conviction the court made a mistake by excluding taxes. The court did not clearly err by excluding taxes in its valuation of the Plaintiffs' indirect interests in Shilo.

B

[¶25] The Defendants contend the district court erred by using the 2019 Shilo appraisal instead of the 2017 appraisal. The Defendants assert the agreement in principal called for the use of the 2017 appraisal of Shilo.

[¶26] "A district court's findings on valuation of property will not be reversed unless they are clearly erroneous." *Puklich*, 2019 ND 154, ¶ 8. A court's finding

7

on valuation is not clearly erroneous if it falls within the range of evidence presented at trial. *Id.*

[¶27] The district court found the 2019 appraisal of Shilo was a more accurate and fair determination of Shilo's value. The court found the Plaintiffs continued their indirect ownership in Shilo through the trial. The court found the Plaintiffs continued to "pay tax on their share of the earnings and which Shilo retained, without making any distributions" to the Plaintiffs. The court found "Shilo's financial condition [since 2017] was significantly enhanced as a result [of] the Plaintiffs' ownership and use of retained earnings to leverage its operations." The court found:

> "The Defendants . . . used Plaintiffs' income shares, after Plaintiffs paid tax on them, to greatly increase the Defendants' own equity in Shilo. The Plaintiffs are not donors; they were kept on as indirect owners, to their detriment, rather than the Defendants buying their shares earlier and discontinue allocating Shilo's income to the Plaintiffs. The protracted delay in the litigation by the Defendants appears to be planned to build up Shilo at the Plaintiffs' expense, but paying the Plaintiffs based on an earlier, less profitable and less valuable timeline which would have reflected a loss from the operations. . . . The court finds the 2019 appraisals . . . and Shilo's financial statements as of April 30, 2019 are the fair barometer of Shilo's value because the Plaintiffs continued to contribute, and pay tax, on undistributed income that resulted in the growth and increased productivity of Shilo."

[¶28] The agreement in principal contemplated using the 2017 appraisal of Shilo; however, the district court made findings and explained why the 2019 appraisal was a more accurate and fair determination of Shilo's value. *See Puklich*, 2019 ND 154, ¶ 24 (stating that in a proceeding for dissolution, a court has discretion to decide what is fair and equitable under the circumstances). Under the unique facts of this case, including the Defendants' control of certain assets since the litigation began in 2016, the court did not err in valuing Shilo as of 2019.

## V

[¶29] The parties' remaining arguments are either without merit or are not necessary to our decision. The judgment is affirmed.

[¶30] Gerald W. VandeWalle
Daniel J. Crothers, Acting C.J.
Jerod E. Tufte
Douglas A. Bahr, D.J.
Bruce B. Haskell, S.J.

[¶31] The Honorable Douglas A. Bahr, D.J., sitting in place of McEvers, J., disqualified.

[¶32] The Honorable Bruce B. Haskell, S.J., sitting in place of Jensen, C.J., disqualified.